OPINION OF THE COURT
Thomas Farber, J.
Respondent Maurice G. moves to dismiss a petition filed pursuant to article 10 of the Mental Hygiene Law (the Sex Offender Management and Treatment Act). He argues that this case is governed by the Court of Appeals’ recent decision in Matter of State of New York v Donald DD. (24 NY3d 174 [2014]). For the reasons stated herein, I agree with respondent, and, accordingly, the petition is dismissed.
Background
The Underlying Crime
Respondent was charged with sexual abuse in the first degree (Penal Law § 130.65 [1]), and related charges, for abusing a 13-year-old girl with cerebral palsy. He was arrested on August 5, 2008, the date of the incident. On March 19, 2009, respondent pleaded guilty to sexual abuse in the first degree in full satisfaction of the indictment in exchange for a promised sentence of two years and three years’ postrelease supervision. Respondent was sentenced on April 9, 2009.
Respondent’s Criminal History
In addition to the underlying conviction in 2009 for sexual abuse in the first degree, which is the only qualifying offense for purposes of article 10, respondent was convicted of three counts of sexual battery, a misdemeanor, for an incident that occurred on December 11, 2006 in North Carolina. Respondent was on a bus sitting next to the complainant and rubbed her legs and her breast, positioning his legs so she could not leave the seat. He kissed her and put his fingers in her vagina. Respondent admitted “messing around” with the complainant but said it was consensual. Respondent served 84 days in jail for this conviction.
On October 22, 2005, in North Carolina, respondent was arrested for attempting to rape a woman in a field and later throwing her out of a moving car. The victim was a 56-year-old *694 female identified as a “friend” of respondent. Respondent was 20 at the time. He was convicted on June 19, 2006 of assault, serious bodily injury and sexual battery, and sentenced to 19 to 23 months’ incarceration, and 36 months’ probation.
In addition to these convictions, petitioner’s psychological report indicates that respondent was twice convicted of theft of services in New York in 1997.[1]
The Article 10 Petition
On April 14, 2010, petitioner filed an article 10 proceeding against respondent. A probable cause hearing was held and respondent was committed to a secure treatment facility. At the facility, while technically on parole supervision, respondent pleaded guilty to assaulting a staff person. He was sentenced to two years and seven months in prison for violating his parole. The article 10 petition was withdrawn.
The instant petition was filed on July 29, 2013. Respondent waived his right to a probable cause hearing and invoked his right to transfer venue to New York County.
By notice of motion dated November 10, 2014, respondent moved to dismiss the petition. Respondent argued that the finding of “mental abnormality” pursuant to section 10.03 (i) was based solely on a diagnosis of “antisocial personality disorder” and thus fell squarely within the holding of Matter of State of New York v Donald DD. (24 NY3d 174, 177 [2014] [“evidence that a respondent suffers from antisocial personality disorder cannot be used to support a finding that he has a mental abnormality”]). Petitioner responded that respondent was diagnosed not only with antisocial personality disorder, but also with “psychopathy.”
*695 The Hearing Testimony
A hearing was held before me on December 18, 2014.[2] At the hearing I heard from Dr. Ronald Field. Dr. Field is a psychologist employed by the New York State Office of Mental Health, Division of Forensic Services. Dr. Field testified that respondent suffers from antisocial personality disorder (ASPD) and “psychopathy.” Psychopathy is a non-DSM condition that is generally recognized in the mental health field. In order to diagnose psychopathy, mental health professionals use a test called the Hare PCL-R, designed by Robert D. Hare. According to Dr. Field, psychopathy is a rarer and more serious condition than ASPD. And, although psychopaths will frequently also be diagnosed as having ASPD, it is an entirely separate condition.[3]
The Diagnostic and Statistical Manual of Mental Disorders (5th ed) (DSM-V) provides the following diagnostic criteria for ASPD:
A pervasive pattern of disregard for and violation of the rights of others, occurring since age 15 years, as indicated by three (or more) of the following:
1. Failure to conform to social norms with respect to lawful behaviors, as indicated by repeatedly performing acts that are grounds for arrest.
2. Deceitfulness, as indicated by repeated lying, use of aliases, or conning others for personal profit or pleasure.
*696 3. Impulsivity or failure to plan ahead.
4. Irritability and aggressiveness, as indicated by repeated physical fights or assaults.
5. Reckless disregard for safety of self and others.
6. Consistent irresponsibility, as indicated by repeated failure to sustain consistent work behavior or honor financial obligations.
7. Lack of remorse, as indicated by being indifferent to or rationalizing having hurt, mistreated, or stolen from another.[4]
Psychopathy is diagnosed pursuant to the 20-factor Hare PCL-R (“psychopathy checklist — revised”). The examiner considers the 20 factors, assigning a value of zero, one or two to each factor. The factors are:
1. Glibness, superficial charm.
2. Grandiose sense of self worth.
3. Need for stimulation, proneness to boredom.
4. Pathological lying.
5. Conning, manipulative behavior.
6. Lack of remorse or guilt.
7. Shallow affect.
8. Callous/lack of empathy.
9. Parasitic lifestyle.
10. Poor behavioral controls.
11. Promiscuous sexual behavior.
12. Early behavior problems.
13. Lack of realistic long-term goals.
14. Impulsivity.
15. Irresponsibility.
16. Failure to accept responsibility for one’s own actions.
17. Many short term marital relationships.
18. Juvenile delinquency.
19. Revocation of conditional release.
20. Criminal versatility.
A score of 30 or above would result in a finding of psychopathy. According to Dr. Field, one is either a psychopath or one is not. If one scores, for example, 29 or 28, one might be diagnosed as *697 having “psychopathic traits,” but would not have a diagnosis of psychopathy.[5] Dr. Field gave respondent a score of 31.[6]
Dr. Field further testified that the 20 conditions that are evaluated for psychopathy fall into two categories called “Factor One” and “Factor Two.” The Factor Two conditions are generally the ones associated with criminal behaviors and therefore overlap with the criteria for ASPD. The Factor One conditions are “personality based” conditions and “emotional factors” such as superficial charm and depressed mood.
According to Dr. Field, psychopathy and ASPD are “completely different disorders,” the “main difference” being that “psychopathy is considered a more serious condition.” Only 10% to 30% of people suffering from ASPD suffer from psychopathy.[7]
Dr. Field testified that respondent was not diagnosed with any paraphilia, including the somewhat amorphous diagnosis of paraphilia NOS (not otherwise specified) or “other specified paraphilic disorder” in DSM-V speak.[8] In essence, Dr. Field testified that people with a diagnosis of antisocial personality disorder, because of the nature of the disorder, were more likely to re-offend. People with psychopathy, because it is a more extreme condition, were even more likely to re-offend than those with only ASPD. Neither ASPD nor psychopathy predispose an offender to commit sex crimes. A person with a history of sex crimes who has ASPD, however, is more likely to re-offend as a sex criminal. A person with psychopathy is much more likely to re-offend as a sex criminal. Similarly, if someone has a history of domestic abuse or robbery, the diagnosis of *698 ASPD makes it more likely that he will re-offend as an abuser or robber.[9]
[10]The diagnosis of psychopathy makes it that much more likely.
The Law
In Donald DD. (24 NY3d 174, 177 [2014]) the Court of Appeals held that “evidence that a respondent suffers from antisocial personality disorder cannot be used to support a finding that he has a mental abnormality as defined by Mental Hygiene Law § 10.03 (i), when it is not accompanied by any other diagnosis of mental abnormality.” The question presented here is whether “psychopathy” can be considered such a diagnosis.[10]
Donald DD. was convicted of rape in the second degree for having sex with a 12 year old when he was 18. He received a sentence of six months’jail and 10 years’ probation. Shortly after his release from prison, Donald DD. was arrested for having *699 non-consensual sex with a friend of his wife. He pleaded guilty to sexual abuse in the second degree and received a sentence of six months’ imprisonment. Donald DD.’s probation was revoked following an arrest for a non-sex offense and he was sentenced to 1 to 3 years in state prison. He was evaluated for civil management under article 10, found to have ASPD, but not to have a “mental abnormality.” While conditionally released to parole, Donald DD. was investigated for touching the “privates” of his own children and having non-consensual sex with his wife. Although there were no criminal charges, Donald DD.’s parole was revoked and an article 10 proceeding was commenced.
Donald DD. was again diagnosed as having ASPD. This time, however, the State’s psychiatrist opined that the ASPD predisposed him to" commit conduct constituting a sex offense. The predisposition, however, was not based on the inherent nature of ASPD, but rather on the pattern of continuous violation of the law by committing sex crimes. A jury found that respondent had a condition, disease or disorder that predisposed him to the commission of conduct constituting a sex offense and the Appellate Division affirmed the finding.
The Court of Appeals reversed, holding that a civil commitment under Mental Hygiene Law article 10 cannot “be based solely on a diagnosis of ASPD, together with evidence of sexual crimes.” (Id. at 189.) The Court first noted the language from the United States Supreme Court’s opinion in Kansas v Crane (534 US 407, 413 [2002] [also quoted in the dissent in Shannon <S.]), that to survive constitutional challenge “the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.” (Donald DD., 24 NY3d at 189.)
The Court then noted the testimony in the Kenneth T. trial (the companion case to Donald DD.) that perhaps 80% of the prison population has ASPD (noting other estimates between 40% and 70%). The Court held that ASPD by itself does not distinguish the sex offender with a mental abnormality from the “typical recidivist” and cannot be the basis for a civil commitment under article 10. The problem with the diagnosis of ASPD, according to the Court of Appeals, is not that the diagnosis is unreliable, but that “ASPD establishes only a general tendency toward criminality, and has no necessary relationship *700 to a difficulty in controlling one’s sexual behavior.” (Donald DD. at 191.)
Petitioner urges me to read the Court of Appeals’ opinion as being limited to ASPD. This argument would have me understand the majority’s decision in Donald DD. as based largely on the prevalence of antisocial personality disorder among the prison population in general. That is, a finding of ASPD is so common among the general population that to permit a diagnosis of ASPD to suffice for a finding of “mental abnormality” would subject a great majority of all sex offenders to civil commitment. Psychopathy, on the other hand, is a much rarer disorder, and it requires a finding that a respondent has personality traits not necessarily present in a diagnosis of ASPD. These personality traits make it even more likely that a person with psychopathy will re-offend. Since psychopathy is a much rarer and more powerful diagnosis, the danger of a routine finding of mental abnormality based upon a finding of psychopathy is not present.
I do not believe that the Court of Appeals’ opinion should be read so narrowly. The problem that the Court had with using ASPD as a diagnosis was not solely the prevalence of ASPD among the general population. The problem was that ASPD is not a sexual disorder: it indicates a general tendency towards criminality and recidivism, but does not predispose one to commit sex crimes. The Court held that in order to be a “mental abnormality” within the meaning of article 10, the disorder at issue had to be one that predisposes one to commit a sex offense and have difficulty controlling one’s sexual behavior.
The explicit language of article 10 requires “a . . . condition, disease or disorder that affects the emotional. . . capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling [that] conduct.” (Mental Hygiene Law § 10.03 [i].) And the Court of Appeals has required us to read this language in a manner that “accords with the[ ] constitutional requirements” of Kansas v Crane (534 US 407, 413 [2002]). {Donald DD. at 189.) That is, that it “ ‘distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.’ ” (Donald DD. at 189 [emphasis removed].)
ASPD does not in itself predispose one to commit a sex crime (as opposed to any other type of crime) — although it may make *701 any criminal more likely to re-offend. Psychopathy, according to Dr. Field, is no different. A psychopath is more likely to re-offend than a non-psychopath. But a psychopath is only more likely to re-offend as a sex criminal if he has a history of sex crimes.[11]
Thus, psychopathy, like ASPD, is not a “sexual disorder” like pedophilia or the other paraphilias classified in the DSM. While it, like ASPD, may be a likely indicator of recidivism, it is not “a . . . condition, disease, or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct.” Like ASPD, psychopathy “establishes only a general tendency toward criminality, and has no necessary relationship to a difficulty in controlling one’s sexual behavior.” {Id. at 191.)[12]
Accordingly, the petition is dismissed.

. Both petitioner’s expert and respondent’s expert noted in their reports a July 7, 2002 arrest for rape in the first degree and related offenses, but that these charges were dismissed on July 29, 2002, and the record sealed. Respondent’s psychological report also included a report that respondent was suspected of looking into the window of an adult female on October 14, 2006 in North Carolina, but there was no arrest or legal proceedings stemming from this event. The psychological report prepared by petitioner’s expert indicates that respondent was arrested in North Carolina in 1994 for breaking and entering, but there was no true bill, and there were also arrests in Maryland and Pennsylvania (five different dates in Pennsylvania) for various offenses with dispositions unknown. In New York, respondent was arrested for criminal possession of a controlled substance in the third degree in 1998, but this case was also dismissed and sealed.

. The statutory scheme contemplates a jury trial, unless waived, on the issue of whether respondent is a “detained sex offender” who suffers from a “mental abnormality.” (Mental Hygiene Law § 10.07 [a], [b].) “Mental abnormality” is defined as “a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct.” (Mental Hygiene Law § 10.03 [i].) Since the statute contemplates a jury trial, the purpose of the hearing was solely to determine if there was any issue of fact that could be presented to a jury. Accordingly, I heard only from the petitioner’s expert. Although originally styled as a “motion to dismiss,” I have treated the motion in the nature of a motion for summary judgment.

. Although petitioner’s papers state that “all persons who suffer from Psychopathy have ASPD” and the Court of Appeals has referred to psychopathy as “an extreme form of ASPD” in Matter of State of New York v Donald DD. (24 NY3d at 183 n 3), Dr. Field testified to the contrary. Particularly he noted that the diagnosis of ASPD requires that there be a “pervasive pattern of disregard for and violation of the rights of others occurring since age 15 years,” which is not a requirement of psychopathy.

. The diagnosis also requires that the individual be more than 18; that there be evidence of conduct disorder with onset before age 15 years; and that the behavior not occur exclusively during the course of schizophrenia or bipolar disorder.

. As discussed more fully below, although the Court of Appeals noted in a footnote that Donald DD. was diagnosed as suffering from “psychopathy” (24 NY3d at 183 n 3); it appears that the diagnosis was not “psychopathy” but antisocial personality disorder with psychopathic traits. (See Matter of State of New York v Donald DD., 107 AD3d 1062, 1063 [3d Dept 2013], revd 24 NY3d 174 [2014].)

. An earlier exam, conducted prior to respondent’s parole violation, gave him a score of 28.

. Since I am treating this as a motion for summary judgment, I accept this statistic as true.

. The Court of Appeals, in Matter of State of New York v Shannon S. (20 NY3d 99 [2012]), over vigorous dissent, accepted paraphilia NOS — a DSM-IV diagnosis — as a condition that could form the basis of a mental abnormality. This was an issue in Matter of State of New York v Kenneth T., the companion case to Donald DD. The Court of Appeals majority in Donald DD., which included the three dissenting Judges in Shannon S., declined to overrule Shannon S., although it did suggest that the diagnosis might not survive a Frye hearing.

. As Dr. Field pointed out, psychopathy is not limited to sex crimes, and Dr. Hare, who formulated the PCL-R, has recently written about psychopathy in Wall Street bankers. (See Paul Babiak & Robert D. Hare, Snakes in Suits: When Psychopaths Go to Work [2006].)

. The opinion in Donald DD. considered two respondents, Donald DD. and Kenneth T. Kenneth T. committed a knifepoint rape for which he was sentenced to 17 years in state prison. Shortly after his release to parole he attempted to rape another woman, was convicted and sentenced to eight years in state prison. A state psychiatrist testified that Kenneth T. had a “mental abnormality” within the meaning of article 10, based upon a diagnosis of “paraphilia NOS” and ASPD. These two disorders, according to the State’s psychiatrist, predisposed him to the commission of sex offenses and resulted in his having difficulty controlling his conduct. The paraphilia predisposed Kenneth T. to committing sexual acts and the ASPD “gave rise to a serious difficulty in controlling the urge to rape.” (24 NY3d at 179.) The State’s expert identified two facts that showed that Kenneth T. had difficulty controlling his sexual misconduct. First, he committed his offenses under circumstances that would permit his victims to identify him. Second, he committed the second rape soon in spite of his having just served a 17-year prison sentence for rape.
The Court held that this testimony did not constitute clear and convincing evidence that Kenneth T. had “ ‘serious difficulty in controlling’ his sexual misconduct within the meaning of [Mental Hygiene Law] section 10.03 (i).” (Id. at 187.) Specifically the Court held that it was not permissible to find a lack of self-control from the “facts of a sex offense alone”:
“Undoubtedly, sex offenders in general are not notable for their self-control. They are also, in general, not highly risk-averse. But beyond these truisms, it is rarely if ever possible to say, from the facts of a sex offense alone, whether the offender had great difficulty in controlling his urges or simply decided to gratify them, though he knew he was running a significant risk of arrest and imprisonment.” (Id. at 188.)

. Dr. Field did testify that there might be a higher risk of sex offending in general for someone with psychopathy, but that this was also the case for antisocial personality disorder:
“Dr. Field: The research that I looked at shows that anybody with antisocial personality disorder . . . equates to a higher risk of sex offending, and that psychopathy is an even higher risk of sex offending, but antisocial personality disorder does, by itself increase the risk for sex offending.
“The Court: So it’s similar to psychopathy in that. . . somebody who is a sex offender [and] has antisocial personality disorder, in your view would be more likely to sexually re-offend, more than someone who doesn’t have—
“Dr. Field: Right, the difference being that psychopathy is even higher.”

. Indeed, as noted in n 5, above, the Court of Appeals apparently believed that Donald DD. had a diagnosis of psychopathy. I agree with petitioner that the Court of Appeals did not actually decide the issue in Donald DD. — and that Donald DD. in fact probably did not have a diagnosis of psychopathy, but only ASPD “with psychopathic traits” — scoring just under the 30 points necessary for a full diagnosis of psychopathy. I think it unlikely, however, that the Court of Appeals intended that the difference between someone having a “mental abnormality” or not should depend on whether a psychologist scores an offender as a “29” or “30” on the PCL-R. Here, for example, respondent received a score of two points for “criminal versatility” (diversity of criminal behavior) on one exam. Had the examiner determined that he specialized solely in sex crimes, he would have received a lower score.