Matter of State of New York v Kenneth II (2020 NY Slip Op 05980)





Matter of State of New York v Kenneth II


2020 NY Slip Op 05980


Decided on October 22, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 22, 2020

526890 529584

[*1]In the Matter of State of New York, Respondent,
v
Kenneth II., Appellant.

Calendar Date: September 9, 2020

Before: Egan Jr., J.P., Mulvey, Devine, Aarons and Colangelo, JJ.


Adam H. Van Buskirk, Auburn, for appellant.
Letitia James, Attorney General, Albany (Jonathan D. Hitsous of counsel), for respondent.



Mulvey, J.
Appeals (1) from an order of the Supreme Court (Reynolds Fitzgerald, J.), entered March 19, 2018 in Cortland County, which, in a proceeding pursuant to Mental Hygiene Law article 10, among other things, denied respondent's motion to set aside the jury verdict, (2) from an order of said court, entered March 29, 2018 in Cortland County, which, in a proceeding pursuant to Mental Hygiene Law article 10, denied respondent's motion to dismiss the petition, and (3) from an order of said court, entered June 5, 2019 in Cortland County, which granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 10, to find respondent to be a dangerous sex offender and confined respondent to a secure treatment facility.
In 2005, respondent [FN1] was convicted of rape in the first degree and sentenced to a prison term of 10 years, followed by five years of postrelease supervision. As respondent's 2014 conditional release date neared, Alfred Barnes, a licensed psychologist employed by the Office of Mental Health, conducted a psychiatric examination to determine whether respondent was a detained sex offender who suffered from a mental abnormality, within the meaning of Mental Hygiene Law article 10 (see Mental Hygiene Law §§ 10.03 [g], [i]; 10.05 [e]).[FN2] Barnes diagnosed respondent with other specified paraphilic disorder (hereinafter OSPD) (nonconsent) with sadistic features, and antisocial personality disorder (hereinafter ASPD) with psychopathic traits. Based on Barnes' conclusion, a Case Review Team found respondent to be a sex offender requiring civil management (see Mental Hygiene Law §§ 10.03 [q]; 10.05 [e], [g]). Petitioner then commenced this proceeding seeking an order finding same, annexing Barnes' report to its application (see Mental Hygiene Law § 10.06 [a]).
Respondent elected to waive the right to a probable cause hearing, through a notarized, written waiver, and consented to both a finding of probable cause and remaining in the custody of the Department of Corrections and Community Supervision pending disposition of the matter. Based on the papers filed, Supreme Court (Rumsey, J.) concluded that there was probable cause to believe that respondent was a sex offender requiring civil management. Prior to the start of trial, Supreme Court determined that, pursuant to Matter of State of New York v Floyd Y. (22 NY3d 95 [2013]), certain hearsay basis evidence would be admissible at trial, including respondent's prior sex offenses, probation violations, assault charges and a person in need of supervision adjudication. At a July 2015 jury trial, petitioner presented the expert testimony of Barnes and another licensed psychologist, Stuart Kirschner, who, like Barnes, diagnosed respondent with ASPD with psychopathic features, but further concluded that respondent suffers from bipolar disorder, borderline personality disorder and cannabis abuse, severe, in a controlled environment. The jury found respondent to be a detained sex offender who suffers from a mental abnormality (see Mental Hygiene Law §§ 10.03 [g], [i]; 10.07 [d]).
Pending disposition, respondent moved, pro se, to substitute counsel, asserting a litany of complaints with respect to counsel's communication and performance, including counsel's alleged disregard of the evidentiary value of respondent's gender dysphoria diagnosis and counsel's failure to move to preclude evidence of certain of respondent's diagnoses from trial or request a Frye hearing regarding them. After Supreme Court denied the motion, respondent, through counsel, moved to preclude from the dispositional hearing the admission of any expert testimony regarding OSPD (nonconsent) or rape-based paraphilias by any name, or, in the alternative, for a Frye hearing, citing scholarly journals and newly-issued trial court decisions that had found that the diagnosis of OSPD (nonconsent) was not generally accepted in the relevant scientific communities. The court granted respondent's preclusion motion, based on petitioner's assertion that it did not intend to rely on such evidence and the court's determination that this evidence would be irrelevant to the disposition.
The dispositional hearing was further adjourned and, in June 2017, respondent filed a pro se motion seeking, among other relief, permission to proceed pro se and that the jury verdict be set aside due to ineffective assistance of counsel and legally insufficient evidence. Supreme Court (Reynolds Fitzgerald, J.) immediately granted respondent's request to proceed pro se but, by order entered March 19, 2018, denied the motion in all other respects. Meanwhile, in November 2017, respondent — at that point pro se — moved to dismiss the petition on numerous grounds, including failure to state a cause of action. By order entered March 29, 2018, Supreme Court denied that motion in its entirety. Respondent then moved, unsuccessfully, to vacate the prior probable cause hearing waiver.
Eventually, respondent waived the right to a dispositional hearing, citing various strategic reasons for doing so, and acknowledged that Supreme Court would enter an order requiring confinement in a secure treatment facility. Accordingly, by order entered June 5, 2019, the court adjudicated respondent a dangerous sex offender requiring civil confinement and ordered respondent confined to a secure treatment facility (see Mental Hygiene Law § 10.03 [e]). Respondent appeals from the two March 2018 orders and the June 2019 order.[FN3]
Respondent contends that, because Mental Hygiene Law article 10 does not expressly authorize respondents to waive their statutory right to a probable cause hearing, such a waiver is prohibited and that, even if such a waiver were permissible, any waiver must be on the record following a colloquy with the court in order to satisfy due process guarantees. According to respondent, if the waiver of a probable cause hearing was invalid, everything that followed thereafter was likewise invalid. First addressing mootness, the remedy for any error with respect to respondent's waiver of the right to a probable cause hearing would only involve remittal for such a hearing to be held, and respondent has since been found after trial to have a mental abnormality by clear and convincing evidence, a higher standard than would be applied at a probable cause hearing (compare Mental Hygiene Law § 10.07 [d], with Mental Hygiene Law § 10.06 [k]). Accordingly, respondent's challenges to Supreme Court's denial of the motion to vacate the probable cause hearing waiver are moot (see People ex rel. Charles B. v McCulloch, 155 AD3d 1559, 1560 [2017], lv denied 31 NY3d 906 [2018]; see also Matter of Pelton v Crummey, 156 AD3d 1305, 1305-1306 [2017]; People ex rel. Wright v Demars, 153 AD3d 1466, 1467 [2017]; People ex rel. David v New York State Div. of Parole, 12 AD3d 963, 963 [2004]), so we will not address them.
Respondent did not preserve most of the current arguments challenging the legal sufficiency of the evidence at trial. Respondent now argues that petitioner failed to present legally sufficient evidence because the diagnosis of OSPD (nonconsent) is not generally accepted in the relevant scientific communities, that ASPD alone cannot form the basis for a finding of mental abnormality, and that petitioner failed to establish that respondent has serious difficulty controlling sex-offending conduct. As to OSPD (nonconsent), respondent failed, prior to trial, to seek to preclude any evidence related to said diagnosis or request a Frye hearing on that topic. Respondent further failed, at trial, to object to the challenged testimony or move for a directed verdict on this basis or any other (see CPLR 4401), and such issue "cannot now be resurrected by way of respondent's CPLR 4404 motion" (Matter of State of New York v Robert G., 179 AD3d 1164, 1166 [2020], lv denied 35 NY3d 908 [2020]; see Matter of State of New York v David S., 136 AD3d 445, 446-447 [2016]). Also unpreserved is the argument regarding respondent's inability to control sex-offending behavior (see Matter of State of New York v Robert G., 179 AD3d at 1166-1167; Matter of State of New York v Steven M., 159 AD3d 1421, 1422 [2018], lv denied 31 NY3d 913 [2018]). Despite the lack of preservation for most aspects of the legal sufficiency argument, we will fully address that argument in light of respondent's assertion that counsel was ineffective for failing to take actions that would have fully preserved it.
The question in a Mental Hygiene Law article 10 trial is whether a respondent is a "detained sex offender who suffers from a mental abnormality" (Mental Hygiene Law § 10.07 [a]). Respondent conceded to meeting the definition of a detained sex offender (see Mental Hygiene Law § 10.03 [g]). Mental abnormality is defined as "a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03 [i]). With respect to the predicate disorders at issue here, the Court of Appeals has held that ASPD cannot, by itself, support a finding of mental abnormality (see Matter of State of New York v Donald DD., 24 NY3d 174, 177, 189-191 [2014]). Additionally, OSPD replaced, in part, the diagnosis of paraphilia not otherwise specified (hereinafter PNOS) in the Fifth Edition of the American Psychiatric Association's Diagnostic and Statistical Manual, published in 2013 (see generally Matter of State of New York v Robert G., 179 AD3d at 1167 n 2; Matter of State of New York v Kareem M., 51 Misc 3d 1205[A], 2016 NY Slip Op 50427[U], *3 [Sup Ct, NY County 2016]). At the time of respondent's trial, PNOS, although regarded as controversial, remained a legally viable predicate condition for mental abnormality in this state (see Matter of State of New York v Donald DD., 24 NY3d at 186-187; Matter of State of New York v Shannon S., 20 NY3d 99, 107 [2012], cert denied 568 US 1216 [2013]), and no court had held that OSPD, OSPD (nonconsent) or the specifier nonconsent itself could not be relied upon in a Mental Hygiene Law article 10 proceeding.[FN4]
Regarding the control element, the petitioner must demonstrate that a respondent has a serious difficulty controlling his or her sex-offending conduct that is independent from the fact that a diagnosis generally predisposes an individual to commit conduct constituting a sex offense (see Matter of State of New York v Donald DD., 24 NY3d at 188; Matter of State of New York v Frank P., 126 AD3d 150, 162 [2015]). The Court of Appeals has not "delineate[d] 'from what sources sufficient evidence of a serious difficulty controlling sex-offending conduct may arise,' but noted that '[a] detailed psychological portrait of a sex offender would doubtless allow an expert to determine the level of control the offender has over his [or her] sexual conduct'" (Matter of State of New York v Dennis K., 27 NY3d 718, 729 [2016], certs denied ___ US ___, ___, ___, 137 S Ct 574, 579 [2016], 836 [2017], quoting Matter of State of New York v Donald DD., 24 NY3d at 188; see generally Matter of State of New York v Floyd Y., 30 NY3d 963, 964-965 [2017]).
When reviewing legal sufficiency, courts must review the evidence that was admitted at trial — as that was the evidence considered by the jury, regardless of any challenges or alleged errors related thereto — and view that evidence in a light most favorable to the nonmoving party (see Matter of State of New York v Floyd Y., 30 NY3d at 964; People v Maricle, 158 AD3d 984, 985 [2018]; People v Oxley, 64 AD3d 1078, 1079 [2009], lv denied 13 NY3d 941 [2010]). At trial, Barnes testified that he diagnosed respondent with OSPD (nonconsent) with sadistic traits and ASPD with psychopathic traits. He described that OSPD (nonconsent) is a diagnosis premised on a sexual interest in nonconsenting partners and involves sexual behavior associated with coercion, sadism, humiliation and control. He went on to describe that individuals with ASPD generally fail to conform to social norms, are deceitful, impulsive, irritable and aggressive, and demonstrate a disregard for the rights and welfare of others and a lack of remorse. Kirschner testified that he also diagnosed respondent with ASPD with psychopathic features, as well as bipolar disorder, borderline personality disorder and cannabis abuse that was severe, but not active because respondent was in a controlled environment. He added that bipolar disorder is a mood disorder that impacts impulse control, among other things, and that borderline personality disorder is also characterized by deviant traits and impulsivity, as well as aggression, mood swings and substance abuse. Both experts recounted respondent's life history. Kirschner noted that respondent's psychopathic traits first emerged in childhood and that respondent showed no remorse for any early deviant conduct. He noted that respondent led "a reckless life without direction" and continued to make an "extremely poor adjustment" throughout adult life, which included a poor employment history, domestic violence, substance abuse and siring two children for whom respondent provided no care.
Both experts testified that respondent's involvement with the criminal justice system began with a person in need of supervision adjudication in 1982, at the age of 15, and included two assault charges that were dismissed, a conviction for patronizing a prostitute, two first degree rape convictions for separate attacks on strangers, and repeated violations of probation and parole conditions. The experts observed that, even while supervisory services were in place, respondent engaged in impulsive, violent behavior and demonstrated a sense of entitlement, which was exacerbated by substance abuse. According to Barnes, each rape was physically violent, and respondent's status as a probationer or parolee at the time of each rape was further indication that respondent was not able to regulate offensive conduct. Respondent did not take responsibility for the first rape other than pleading guilty and instead either blamed an excessive consumption of alcohol or reported being unable to remember the incident, which both experts viewed as deceitful, manipulative and indicative of a lack of empathy. Despite extended time in prison and on parole, respondent's behavior escalated in the second rape, which was more violent.
Both rapes occurred on or near public streets, with people nearby. In the first rape, the victim heard voices and said her friend would be looking for her, which did not deter respondent. During the second rape, at least three people witnessed it, and respondent's companion returned and spoke to respondent during the incident, yet respondent persisted in the attack. Respondent insisted that the victim was a prostitute who agreed to consensual sex and instigated the violence by biting, yet this version was denied by the victim and otherwise unsupported. That victim indicated that respondent appeared to respond to the beating and violence rather than the sexual aspects of the incident. Additionally, respondent admitted that fights within relationships often turned violent and the ensuing sex was particularly satisfying, indicating that violence was arousing to respondent.
Respondent failed to attend sex offender treatment while on parole. Although respondent completed such treatment in prison, the program coordinators rated respondent's satisfaction of the program a two on a scale with one being lowest and four being highest. The experts noted that respondent did not accept responsibility or address the root causes of offending behavior. Nor did respondent have a realistic or comprehensive relapse prevention plan; respondent identified needing to avoid alcohol but did not acknowledge a need for therapy aimed at psychopathy, impulse control or violent sexual needs. Moreover, as recently as a month before trial, respondent noted a need to work on an understanding of the individualized reasons why respondent commits sex-offending conduct — a process that the experts said should occur toward the beginning of sex offender treatment rather than near the end or after completion of a treatment program.
Inasmuch as no court of this state had determined by the time of respondent's trial that OSPD (nonconsent) was not a legally viable predicate disorder to establish mental abnormality, any issue pertaining to the reliability of the controversial diagnosis or the weight to be given thereto was merely an issue reserved for the jury (see Matter of State of New York v Donald DD., 24 NY3d at 186-187; Matter of State of New York v Shannon S., 20 NY3d at 107), and respondent fails to challenge the weight of the evidence supporting the jury's verdict. Moreover, respondent was also diagnosed with ASPD with psychopathic traits, bipolar disorder, borderline personality disorder and cannabis abuse; various combinations of these conditions, diseases or disorders, with or without OSPD (nonconsent), have repeatedly been held to be legally valid predicates (see Matter of State of New York v Dennis K., 27 NY3d at 750-752; Matter of State of New York v Anthony B., 180 AD3d 688, 690-691 [2020], lv denied 35 NY3d 913 [2020]; Matter of Derek G. v State of New York, 174 AD3d 1360, 1360-1361 [2019]; Matter of State of New York v Steven M., 159 AD3d 1421, 1422 [2018], lv denied 31 NY3d 913 [2018]; compare Matter of State of New York v I.M., 123 AD3d 464, 464 [2014]). Notably, respondent does not challenge the evidence linking any of these diagnoses to a predisposition to commit conduct constituting a sex offense (see generally Matter of State of New York v Dennis K., 27 NY3d at 726). After looking at the entire picture of respondent's life and behavior, both experts opined that respondent has a mental abnormality that predisposes respondent to the commission of conduct constituting a sex offense and that results in respondent having serious difficulty in controlling such conduct. Viewing the expert testimony in the light most favorable to petitioner, the evidence admitted at trial was legally sufficient to meet petitioner's burden (see Matter of State of New York v Floyd Y., 30 NY3d 963, 964-965 [2017]). Therefore, respondent was not deprived of meaningful representation based on counsel's failure to preserve any legal insufficiency arguments.
Respondent alleges additional deprivation of the effective assistance of counsel due to counsel's failure to (1) present an expert witness and other evidence regarding respondent's medical treatment for gender dysphoria and (2) move for a pretrial Frye hearing challenging the OSPD (nonconsent) diagnosis. "Because [a] respondent [in a Mental Hygiene Law article 10 proceeding] is subject to civil confinement," courts apply the same standard as when "determining whether effective assistance of counsel was provided in criminal matters" (Matter of State of New York v Jamie KK., 168 AD3d 1231, 1233 [2019] [internal quotations marks, brackets and citations omitted]). Thus, it is a respondent's burden to demonstrate the absence of strategic or other legitimate explanations for counsel's alleged deficiencies, and this Court must determine whether "the evidence, the law, and the circumstances of [the] particular case, viewed in totality and as of the time of the representation, reveal that [counsel] provided meaningful representation" (People v Baldi, 54 NY2d 137, 147 [1981]; see People v Rivera, 71 NY2d 705, 708-709 [1988]; Matter of State of New York v Leslie L., 174 AD3d 1326, 1327 [2019], lv denied 34 NY3d 903 [2019]). Although, generally, the failure to make a certain pretrial motion will not, without more, constitute ineffective assistance of counsel, "'[i]n the rare case,' counsel will be deemed ineffective for failing, in the absence of strategic or other legitimate explanations, to pursue a colorable claim" (People v Wilson, 164 AD3d 1012, 1019 [2018], quoting People v Rivera, 71 NY2d at 709).
We begin with respondent's allegations related to the gender dysphoria diagnosis. "Generally, whether to call an expert is a tactical decision [and,] [i]n many instances, cross-examination of the People's expert will be sufficient to expose defects in an expert's presentation" (People v Caldavado, 166 AD3d 792, 794 [2018] [citations omitted], lv denied 32 NY3d 1170 [2019], cert denied ___ US ___, 139 S Ct 2031 [2019]; see People v Smith, 126 AD3d 1528, 1530 [2015], lv denied 26 NY3d 1150 [2016]). The trial testimony demonstrates that counsel did investigate the evidentiary value of the diagnosis. Counsel cross-examined petitioner's experts regarding gender dysphoria, revealing that both experts lacked knowledge about the disorder and treatment therefor, although both also doubted the sincerity of respondent's gender identity notwithstanding the fact that respondent had been diagnosed with this disorder by medical specialists (see People v Caldavado, 166 AD3d at 794).
Moreover, respondent did not meet the requisite burden because, in order to credit this aspect of respondent's ineffective assistance of counsel claim, we would be required to speculate on the availability and opinion of an expert or would have to consider medical and scientific literature that is outside the record (see People v Narine, 153 AD3d 1280, 1280 [2017], lv denied 30 NY3d 1062 [2017]). For example, respondent faults counsel for not calling as an expert one of the medical professionals that collaborated to diagnose respondent with gender dysphoria, but respondent only speculates that the testimony of such individuals would have been helpful to the defense. Further, respondent asserts that the hormones and antiandrogens in respondent's prescribed treatment regimen are the functional equivalent of chemical castration — which would affect respondent's ability to control sex-offending behavior and respondent's danger to others if not confined — but nothing in the record supports that assertion. We cannot review a contention that is based on matters outside the record (see Matter of State of New York v Carl S., 125 AD3d 670, 672 [2015], lv denied 25 NY3d 912 [2015]; Matter of State of New York v Pierce, 79 AD3d 1779, 1781 [2010], lv denied 16 NY3d 712 [2011]; Matter of State of New York v Campany, 77 AD3d 92, 99-100 [2010], lv denied 15 NY3d 713 [2010]). Thus, respondent has not established that counsel lacked a strategy or tactical reasons for his choices regarding how to handle the interplay of the gender dysphoria diagnosis and the Mental Hygiene Law article 10 petition.
Moving to the allegations of counsel's failure to request a Frye hearing, PNOS — the diagnosis that was replaced, in part, by OSPD — was routinely cited as a predicate condition for mental abnormality in the years preceding respondent's trial, either alone or in combination with other diagnoses (see e.g. Matter of State of New York v Timothy BB., 113 AD3d 18, 22 [2013], appeal dismissed 23 NY3d 941 [2014]; Matter of State of New York v Peter Y., 99 AD3d 1059, 1060-1061 [2012]; Matter of State of New York v James Z., 97 AD3d 1046, 1048 [2012], lv denied 20 NY3d 853 [2012]; Matter of State of New York v Spencer D., 96 AD3d 768, 770 [2012]; Matter of the State of New York v Myron P., 86 AD3d 26, 28-29 [2011], affd 20 NY3d 206 [2012]). In late 2012, the Court of Appeals held, in Matter of State of New York v Shannon S. (20 NY3d 99 [2012], supra), that PNOS was a viable predicate condition, reasoning that any professional debate over the viability and reliability of the diagnosis is relevant to the weight to be attributed thereto and, thus, a question reserved for the finder of fact (id. at 106-107). However, in a three-judge dissent, the diagnosis of PNOS was characterized as "junk science devised for the purpose of locking up dangerous criminals," and the dissent expressed "grave doubt" regarding whether PNOS "would survive a Frye hearing to determine whether it is sufficiently established to have gained general acceptance in the psychiatric community" (id. at 110 [Smith, J., dissenting] [internal quotation marks and citation omitted]).
Courts thereafter relied upon Shannon S. in rejecting legal sufficiency and weight of the evidence challenges premised on the unreliability of PNOS — albeit, in cases where there is no indication that a Frye hearing had been requested (see e.g. Matter of State of New York v Dennis K., 120 AD3d 694, 695 [2014], affd 27 NY3d 718 [2016], certs denied ___ US ___, ___, ___, 137 S Ct 574, 579 [2016], 836 [2017]; Matter of State of New York v Raul L., 120 AD3d 52, 59-60 [2014]; Matter of State of New York v Robert V., 111 AD3d 541, 542 [2013], lv denied 23 NY3d 901 [2014]). In October 2014, the Court of Appeals, in Matter of State of New York v Donald DD. (24 NY3d 174 [2014], supra), acknowledged that PNOS is a "controversial diagnosis," but, on the principle of stare decisis, declined to overrule Shannon S. (id. at 186-187). The Court of Appeals made clear that it did not decide, in either that case or Shannon S., whether the diagnosis of PNOS had received general acceptance in the psychiatric community, as no Frye hearing was requested in either case (id. at 187).
It was not until November 2015 — after respondent's July 2015 jury trial and verdict — when an appellate court first held that it was an abuse of discretion not to grant a request for a Frye hearing regarding PNOS (see Matter of State of New York v Richard S., 133 AD3d 672, 673 [2015]), and it was not until 2016 when trial courts began finding, after holding Frye hearings, that PNOS (nonconsent) and OSPD (nonconsent) were not generally accepted diagnoses in the relevant scientific communities (see e.g. Matter of State of New York v Jason C., 51 Misc 3d 553, 554-584 [Sup Ct, Kings County 2016]; Matter of State of New York v Kareem M., 51 Misc 3d 1205[A], 2016 NY Slip Op 50427[U], *1 [Sup Ct, NY County 2016]; compare Matter of Patrick L., 52 Misc 3d 753, 761-766 [Sup Ct, St. Lawrence County 2016] [relying on other cases where Frye hearings had been held]). Further, it was not until 2018 — by which point respondent was officially pro se and Supreme Court had twice denied motions premised on ineffective assistance — that an appellate court first held that PNOS (nonconsent) failed to meet the Frye standard and, therefore, should not be considered in determining whether a detained sex offender suffers from a mental abnormality (see Matter of State of New York v Richard S., 158 AD3d 710, 711-712 [2018]; see also Matter of State of New York v Anthony B., 180 AD3d at 690 [reaching same finding for OSPD (nonconsent)]).
When evaluating whether counsel's failure to request a pretrial Frye hearing in this case constituted ineffective assistance, counsel's posttrial motion practice sheds light on what counsel knew, or should have known, prior to trial about the acceptance of paraphilic disorders. Counsel filed a posttrial motion, apparently at respondent's urging, to preclude from the dispositional hearing evidence of OSPD (nonconsent) and other paraphilic disorders by any name. In his motion papers, counsel not only cited to several of the foregoing trial court cases that had been recently issued, but also annexed several scientific articles from 2014, 2011 and 2008 that highlight the controversial nature and forensic misuse of paraphilic disorders generally or outright reject PNOS (nonconsent) or OSPD (nonconsent) as diagnoses reliable enough for the courtroom. At least one of these articles, as well as counsel's cross-examination of Barnes at trial, reveal that counsel was at least generally aware that defined nonconsent paraphilias or paraphilic disorders had been rejected for inclusion in various versions of the Diagnostic and Statistical Manual (see generally Matter of State of New York v Kareem M., 2016 NY Slip Op 50427[U] at *24-25; Matter of State of New York v Jason C., 51 Misc 3d at 567-568).
This Court has previously held in the criminal context that where, "at the time of [a] defendant's pretrial proceedings . . ., there were no reported trial court or appellate court decisions in this state establishing that the reliability of [certain new technology] had been assessed through a Frye hearing or that any court in the state had otherwise accepted expert testimony regarding that [technology]" and where "counsel had everything to gain and nothing to lose by challenging [its] admissibility," that counsel was ineffective for "fail[ing] to pursue a colorable request for a Frye hearing" (People v Wilson, 164 AD3d at 1019-1020 [internal quotation marks and citation omitted]). Here, although OSPD (nonconsent) had not been assessed through a Frye hearing, it and its predecessor were routinely relied upon in Mental Hygiene Law article 10 proceedings and, in 2012, PNOS was sanctioned as a viable predicate condition for mental abnormality. However, the 2012 dissent in Shannon S. clearly set the stage for respondents to challenge the viability of PNOS via Frye, and, in 2014, Donald DD. took care to note the controversial nature of PNOS and highlight the foregoing dissent before concluding that it was bound by precedent to uphold Shannon S. only in the absence of a Frye challenge. Additionally, the aforementioned scientific articles reveal that, as early as 2008, at least some part of the scientific community questioned the reliability of the subject diagnoses. Hence, it cannot be said that a motion for a pretrial Frye hearing would have had little or no chance of success (see People v Wilson, 164 AD3d at 1019; see e.g. Matter of Miguel II. v State of New York, 165 AD3d 1513, 1515-1516 [2018]; Matter of State of New York v Richard S., 133 AD3d at 673; compare Matter of State of New York v James N., 171 AD3d 930, 932 [2019], lv denied 33 NY3d 913 [2019]).
With respect to strategy, although Kirschner testified at trial that respondent has several additional diagnoses that, as indicated above, may serve as a predicate disease, disorder or condition, OSPD (nonconsent) and ASPD with psychopathic traits are the only conditions alleged in the petition. Thus, had counsel been successful at a pretrial Frye hearing in precluding consideration of OSPD (nonconsent), it is possible that respondent could have had the petition dismissed before trial (see e.g. Matter of State of New York v Kevin F., 51 Misc 3d 911, 913 [Sup Ct, Kings County 2016]; Matter of State of New York v Maurice G., 47 Misc 3d 692, 693 [Sup Ct, NY County 2015]). Even if the petition was not dismissed, precluding any mention of OSPD (nonconsent) — a diagnosis of a sexually-based disorder predicated on engaging with nonconsenting partners — could only have been helpful to respondent at trial. In other words, counsel "had everything to gain and nothing to lose" by challenging OSPD (nonconsent) in a Frye hearing (People v Wilson, 164 AD3d at 1020 [internal quotation marks and citations omitted]). Indeed, as OSPD (nonconsent) and its predecessor were so routinely relied upon in upholding findings of mental abnormality and are so clearly linked to a predisposition to commit sex-offending conduct, there is no tactical reason for counsel not to have seized the opportunity presented by Donald DD. and the dissent in Shannon S. in the face of such diagnosis. Thus, this single failing deprived respondent of the effective assistance of counsel (see People v Wilson, 164 AD3d at 1019-1021). Accordingly, we hold the appeal from the June 2019 order in abeyance and remit the matter to Supreme Court for a posttrial Frye hearing to consider the reliability of OSPD (nonconsent) based on the information that was available prior to the July 2015 trial, and to report back on its findings (see id. at 1021). Pending the court's determination on remittal, we withhold decision on the remaining issues raised by respondent.
Egan Jr., J.P., Devine, Aarons and Colangelo, JJ., concur.
ORDERED that the appeals from the orders entered March 19, 2018 and March 29, 2018 are dismissed, without costs.
ORDERED that, on the appeal from the order entered June 5, 2019, decision is withheld, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: Although respondent identifies as a transgender woman and requests to be referred to as female, the caption continues to reflect respondent's legal name.

Footnote 2: This examination consisted of a records review, as respondent declined to participate in an interview with Barnes. Respondent similarly declined to be interviewed by petitioner's chosen expert, who is discussed further below.

Footnote 3: We dismiss respondent's appeals from the March 2018 orders, as the right to take direct appeals from these interlocutory orders terminated upon the entry of the June 2019 final order (see Federal Natl. Mtge. Assn. v Syversen, 181 AD3d 1010, 1011-1012 [2020]; Matter of State of New York v Ezikiel R., 147 AD3d 959, 959 [2017]). Nevertheless, the appeal from the final order brings up for review the issues raised regarding the nonfinal orders (see CPLR 5501 [a] [1]; Matter of State of New York v Ezikiel R., 147 AD3d at 959).

Footnote 4: It has since been held that OSPD (nonconsent) and PNOS (nonconsent) are not generally accepted in the psychiatric and psychological communities and, thus, should not be considered in determining whether a detained sex offender suffers from a mental abnormality (see Matter of State of New York v Anthony B., 180 AD3d 688, 690 [2020], lv denied 35 NY3d 913 [2020]; Matter of State of New York v Richard S., 158 AD3d 710, 712 [2018]).