Matter of State of New York v Robert A. (2020 NY Slip Op 05981)





Matter of State of New York v Robert A.


2020 NY Slip Op 05981


Decided on October 22, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 22, 2020

527232

[*1]In the Matter of State of New York, Respondent,
v
Robert A., Appellant.

Calendar Date: September 11, 2020

Before: Lynch, J.P., Clark, Devine, Pritzker and Reynolds Fitzgerald, JJ.


Danielle Neroni Reilly, Albany, for appellant.
Letitia James, Attorney General, Albany (Frederick A. Brodie of counsel), for respondent.



Pritzker, J.
Appeal from an order of the Supreme Court (Hartman, J.), entered May 16, 2018 in Albany County, which granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 10, to revoke respondent's regimen of strict and intensive supervision, found respondent to be a dangerous sex offender and confined him to a secure treatment facility.
The relevant facts are more fully set forth in this Court's prior decision in this matter (Matter of State of New York v Robert C., 113 AD3d 937 [2014]). Briefly, respondent has a history of committing sex offenses. In 2012, respondent was found to be a dangerous sex offender and was confined to a secure treatment facility.[FN1] Thereafter, and in conjunction with an annual review process, Supreme Court (Gigliotti, J.) concluded that, although respondent still suffered from a mental abnormality, he no longer required civil confinement. As a result, respondent was released to a regimen of strict and intensive supervision and treatment (hereinafter SIST) subject to various terms and conditions.
While released on SIST, respondent obtained employment as a dishwasher at a restaurant and also performed odd jobs for a construction contractor. Respondent subsequently advised his parole officer that he had been suspended from the restaurant — purportedly because his fellow employees learned that he was a sex offender and were afraid of him. However, further investigation by the parole officer revealed that respondent was fired from his position — due in part to inappropriate comments that he made toward and regarding female employees. Additionally, the contractor reported that respondent was harassing him, had made inappropriate inquiries regarding the contractor's sexual relationship with his wife and had told the contractor that respondent could get violent. As a result, the parole officer established "exclusion zones" around the restaurant and the contractor's residence, and respondent was prohibited from having any contact with the contractor, his wife and/or any of the restaurant's employees.
Based upon an alleged violation of one of his SIST conditions, respondent was arrested and remanded to the local jail. Petitioner thereafter commenced this proceeding pursuant to Mental Hygiene Law article 10 seeking to revoke respondent's release to SIST and confine him to a secure treatment facility. Following four days of hearings, Supreme Court (Hartman, J.) rendered a detailed decision finding, among other things, that petitioner had established — by clear and convincing evidence — that respondent was a dangerous sex offender requiring confinement and ordered that he be remanded to a secure treatment facility. Respondent appeals.
Respondent contends that petitioner failed to establish that he was a dangerous sex offender in need of confinement, arguing that his confinement to a secure treatment facility is unwarranted and that he should be restored to SIST. Pursuant to Mental Hygiene Law § 10.03 (e), a dangerous sex offender requiring confinement is "a person who is a detained sex offender suffering from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (see Matter of State of New York v David HH., 147 AD3d 1230, 1233-1234 [2017], lv denied 29 NY3d 913 [2017]). Conversely, a sex offender requiring SIST "is an individual who is a detained sex offender and suffers from a mental abnormality . . . but who does not meet the definition of a dangerous sex offender requiring confinement" (id. at 1234; see Matter of State of New York v Michael M., 24 NY3d 649, 659 [2014]). Thus, Mental Hygiene Law § 10.03 draws "a distinction between sex offenders who have difficulty controlling their sexual conduct and those who are unable to control it. The former are to be supervised and treated as outpatients and only the latter may be confined" (Matter of State of New York v Michael M., 24 NY3d at 659 [internal quotation marks omitted]; accord Matter of State of New York v Ted B., 174 AD3d 630, 632 [2019]). As such, in the context of this revocation proceeding, Supreme Court had two dispositional alternatives: civilly confine respondent or return him to the community under SIST (see Matter of State of New York v Jamaal A., 167 AD3d 1526, 1526 [2018], lv denied 33 NY3d 902 [2019]; Matter of State of New York v David HH., 147 AD3d at 1233).
Initially, there is no serious dispute that respondent violated the conditions of his release to SIST by engaging in behavior that threatened the safety or well-being of others. Although respondent's coworkers at the restaurant initially believed that respondent was just trying to be friendly, his demeanor and conduct in following the female servers around the restaurant began to make his coworkers uncomfortable. One of the servers testified that, when she politely declined respondent's offer of a cupcake, respondent threatened to strangle her with her headband and cut off her circulation until her brain fell out. Although respondent's fellow dishwasher interpreted this comment as a joke, he confirmed that respondent did make a comment about wanting to strangle the server while engaging in sexual intercourse with her. Respondent's parole officer found this incident to be particularly troubling, as it "was incredibly similar" to respondent's past history and conduct in offending.[FN2] The fellow dishwasher also testified that respondent repeatedly would comment on the physical appearance of all of the female servers in the restaurant and made a number of sexually-related comments.
As to respondent's inability to control his behavior, Susan Cox, the psychologist who examined respondent on behalf of the Office of Mental Health, diagnosed respondent as suffering from, among other things, a delusional disorder with grandiose and persecutory features and other specified personality disorder with borderline and antisocial traits.[FN3] According to Cox, respondent's flawed perception of his relationships with others — particularly women — precluded respondent from understanding when and how he was breaking the rules that had been put in place to govern his conduct. In addition, although respondent and his expert witness, psychologist Leonard Bard, attributed respondent's "locker room" banter with his fellow dishwasher to social awkwardness occasioned by his many years of incarceration, Cox regarded respondent's comments and behaviors as evidence that he "remains sexually preoccupied." This sexual preoccupation, Cox opined, was "the most important risk factor for [respondent] in the community," as such preoccupation, coupled with respondent's "very poor problem solving skills," "very poor" social skills, lack of remorse and "reckless disregard for how his actions affect other people" created a "very dangerous" situation. In concluding that respondent was, at the time of her evaluation in 2017, "imminently ready to sexually reoffend," Cox focused upon both respondent's past history and his more recent behaviors while released in the community on SIST. Although respondent's two prior sex offenses and his history of disciplinary violations while confined [FN4] predated his release to SIST, Cox deemed such information to be clinically relevant, as it demonstrated a longstanding pattern of respondent's inability to control his behavior — even in the context of a controlled prison environment where the likelihood of detection and further punishment were increased.
In opposition to petitioner's application, respondent offered the testimony of Bard, who first evaluated respondent in 2008 and played a role in his release to SIST in 2017. Bard again met with respondent in December 2017 and January 2018, following which he prepared a written evaluation that was entered into evidence at the hearing. Ultimately, Bard opined that respondent was not a dangerous sex offender requiring confinement because he did not see respondent "evidencing an inability to control his sexual impulses." Although acknowledging that respondent is prone to making "stupid," "offensive" and "inappropriate" statements that demonstrate "horrendous judgment," Bard drew a distinction between what respondent says and how he acts. Similarly, although Bard agreed that respondent needed to have set boundaries, he believed this could be accomplished without confinement. In short, Bard did not equate respondent's inappropriate behavior with a lack of control over respondent's sexual impulses. Respondent also testified, denying that he sexually harassed anyone at the restaurant and accusing his parole officer and former coworkers of either exaggerating or fabricating the allegations against him. Respondent also admitted to saying that he wanted to strangle one of the servers, but he insisted that the comment was taken out of context.
We accord deference to Supreme Court's decision to credit the testimony offered by petitioner's witnesses and Cox's expert opinion, as the court "was in the best position to evaluate the credibility of the expert witnesses and weigh the conflicting expert testimony" (Matter of Juan U. v State of New York, 149 AD3d 1300, 1302-1303 [2017] [internal quotation marks and citation omitted]). Further, based upon our review of the record, we find that petitioner met its burden of establishing, by clear and convincing evidence, that respondent "suffer[s] from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that [he] is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.03 [e]; see Matter of State of New York v Garfield Q., 183 AD3d 1055, 1056 [2020]; Matter of State of New York v Jamaal A., 167 AD3d at 1527). Notably, Supreme Court's analysis was not limited to the facts underlying the SIST violation; rather, the court "was entitled to rely on all the relevant facts and circumstances tending to establish that respondent was a dangerous sex offender" (Matter of State of New York v William J., 151 AD3d 1890, 1891 [2017] [internal quotation marks and citation omitted]). Accordingly, Supreme Court properly revoked respondent's release to SIST and determined that he required civil confinement (see e.g. Matter of State of New York v Karl X., 172 AD3d 1498, 1500 [2019], lv denied 33 NY3d 911 [2019]; Matter of State of New York v Jamaal A., 167 AD3d at 1527).
Lynch, J.P., Clark, Devine and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Upon respondent's appeal, this Court affirmed (State of New York v Robert C., 113 AD3d at 939-940).

Footnote 2: One of respondent's sex offense convictions stemmed from his forcible rape of a 16-year-old victim after he struck her on the head with a 25-pound lead pipe; when the victim failed to lose consciousness, respondent choked her and punched her head before slamming her head against the floor.

Footnote 3: Cox's expert evaluation was admitted into evidence at the hearing, subject to certain hearsay objections. Her evaluation contained, among other things, the results of the various diagnostic assessments performed, all of which placed respondent at a high risk of recidivism.

Footnote 4: Respondent's disciplinary history included, among other violations, masturbating in front of a female correction officer and exposing himself through a hole in his pants while in the prison library.