Matter of State of New York v Joel Z. (2025 NY Slip Op 04055)

Matter of State of New York v Joel Z.

2025 NY Slip Op 04055

Decided on July 3, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 3, 2025

CV-23-0519
[*1]In the Matter of State of New York, Respondent,
v
Joel Z., Appellant.

Calendar Date:June 2, 2025

Before:Garry, P.J., Egan Jr., Fisher, Powers and Mackey, JJ.

Veronica Reed, Schenectady, for appellant.
Letitia James, Attorney General, Albany (Brian Lusignan of counsel), for respondent.

Egan Jr., J.
Appeal from an order of the Supreme Court (Dianne Freestone, J.), entered January 27, 2023, in Saratoga County, which granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 10, to find respondent to be a dangerous sex offender and confined him to a secure treatment facility.
At approximately 1:00 a.m. on June 27, 1994, respondent unlawfully entered the Saratoga County home of the victim, a woman he had gone on two dates with but who had decided not to see him again. He found the victim asleep in bed with her six-year-old daughter. After forcing the child into a closet, he sexually assaulted the victim at knifepoint. The victim eventually managed to convince respondent to leave, although not before he threatened to kill her if she called the authorities. She then went to a neighbor's house and called the police, who soon found and arrested respondent at his residence in Wyoming County.
Respondent told investigators after his arrest that he went to the victim's residence because he loved her and was upset by her "dropp[ing] [him] out of the blue," adding that he was sorry about what happened but that "some women want you to be forceful on them" and he still believed that the victim "wanted [him] to force [himself] on her." Investigators also searched his vehicle and found a number of disturbing items consistent with a "rape kit" in it, including a 9 millimeter handgun and clip of ammunition, gloves, handcuffs, bailing twine, pepper spray and a metal bludgeon. Respondent escaped as he was being transported back to Saratoga County, sparking a two-week-long manhunt that ended with his apprehension in Vermont.
In satisfaction of the ensuing indictments handed up against him, respondent pleaded guilty in Saratoga County to burglary in the first degree and escape in the first degree. He was sentenced to consecutive prison terms of 6½ to 13 years on the burglary conviction and 3½ to 7 years on the escape conviction. Respondent further pleaded guilty in Wyoming County to criminal possession of a weapon in the third degree and was sentenced to 2½ to 5 years in prison, to run consecutively to the sentences imposed on the Saratoga County convictions. His ensuing time in prison was notable for his numerous attempts to escape and his extensive prison disciplinary record, and he was sentenced to serve additional time in prison following convictions for promoting prison contraband in the first degree and attempted escape in the first degree in 2001 and a second conviction for attempted escape in the first degree in 2002.
Respondent was released to parole supervision in March 2018, and he quickly ran into trouble. In June 2018, he lingered outside the building after an appointment with his parole officer and followed a female probation officer who was walking from the building to her vehicle in the parking lot. She confronted him to find out who he was, at which point he stated that he was a parolee who had "seen [her]" earlier [*2]and asked her out on a date. She declined and alerted respondent's parole officer, who warned him that he could not ask probation officers out on a date. Respondent then repeatedly bicycled from his residence in the Town of Argyle, Washington County to the City of Glens Falls, Warren County in the summer and fall of 2018, where he watched numerous women who were working or shopping in various retail settings and, with minimal or no conversation beforehand, approached them and propositioned them for dates and/or a sexual relationship. He persisted after being turned down and made several of the women feel so threatened that they reported the encounters to the police. Respondent's parole officer learned of those incidents and, in September 2018, told him that "he can't approach people like that."
Matters escalated on October 5, 2018, when respondent entered a supermarket in the Town of Queensbury, Warren County, followed a woman around the store and handed her a card. One such card was entered into evidence, and it stated that respondent thought the woman was "very attractive" and that she should contact him if she wanted "a real hot hookup." The woman called 911 about that incident and police notified respondent's parole officer, who spoke to him the next day and verbally imposed a new parole condition barring him from handing out such cards and to avoid frequenting stores unless he was doing business in them. Before that new condition could be reduced to writing, the police were contacted on October 10, 2018 with several reports that respondent was approaching women he did not know in the City of Saratoga Springs, Saratoga County, and handing them cards soliciting them for sex. Police officers confronted respondent and told him to stop and leave the area. They then watched as he followed yet another woman as she left a coffee shop, called her by name and confronted her near her car, where he handed her a card propositioning her. He was taken into custody and, at the station, he elected to use his one phone call to contact an acquaintance despite the fact that the conditions of his parole required him to immediately contact his parole officer when having any police interaction. He was detained on a parole violation warrant and, in December 2018, admitted that he had violated the conditions of his parole by soliciting sexual relationships from women via the cards and by failing to immediately report his contact with the Saratoga Springs police to his parole officer. He returned to prison.
As respondent's release neared in March 2020, petitioner commenced this Mental Hygiene Law article 10 proceeding alleging that respondent was a sex offender requiring civil management. A jury trial ended with a verdict finding that respondent suffered from a mental abnormality, meaning "a condition or disorder that predisposes him to committing sex offenses and resulted in his 'having serious difficulty in controlling such conduct' " (Matter of State of New York [*3]v Myron P., 86 AD3d 26, 28 [3d Dept 2011], affd 20 NY3d 206 [2012], quoting Mental Hygiene Law § 10.03 [i]).[FN1] Following a dispositional hearing, Supreme Court ruled from the bench that petitioner had proven that respondent was a dangerous sex offender requiring confinement and committed him to a secure facility (see Mental Hygiene Law § 10.07 [f]). Respondent appeals from the order issued to implement that decision.[FN2]
We affirm. Respondent first argues that the jury's verdict that he suffered from a mental abnormality is not supported by legally sufficient evidence and is against the weight of the evidence. "Where the record demonstrates that there was a valid line of reasoning by which the jury could conclude that the respondent suffered from a mental abnormality as defined in Mental Hygiene Law § 10.03 (i), the verdict is supported by legally sufficient evidence" (Matter of State of New York v Robert G., 179 AD3d 1164, 1166 [3d Dept 2020] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 908 [2020]; see Matter of State of New York v Kenneth BB., 93 AD3d 900, 901 [3d Dept 2012]). "When sufficient evidence exists, a jury verdict may be set aside as against the weight of the evidence only when the evidence preponderates so greatly in respondent's favor that the jury could not have reached its conclusion on any fair interpretation of the evidence" (Matter of State of New York v Richard VV., 74 AD3d 1402, 1403 [3d Dept 2010] [internal quotation marks, brackets and citations omitted]; see Matter of State of New York v Timothy BB., 113 AD3d 18, 21 [3d Dept 2013], appeal dismissed 23 NY3d 941 [2014]). Petitioner here attempted to demonstrate that respondent had a mental abnormality via the testimony of the victim in the 1994 attack as well as several of the women who were approached by respondent when he was out on parole and described how he watched, followed and propositioned them. Petitioner further presented the testimony of two clinical psychologists, Debbie Green and Susan Cox, each of whom performed a psychological evaluation of respondent and agreed that he suffered from a mental abnormality.
Green diagnosed respondent with other specified personality disorder with antisocial traits, alcohol use disorder and major depressive disorder. She added that an additional diagnosis was warranted to account for respondent's "very clear social impairments and . . . very distorted perceptions" relating to his belief that women were interested in him but rejected his advances because he was not forceful enough with them, a belief reflected in his statements to investigators in the wake of the 1994 assault and to Green herself, as well as in letters he wrote to Green, Cox and others that were placed into evidence. Green was "uncertain" as to whether respondent's warped perception of reality was best explained by delusional disorder or autism spectrum disorder. What she was certain of, however, was that his "rigid, distorted beliefs [*4]about how women perceive him and want him to behave" combined with his other diagnoses to predispose him to commit sex offenses. She further articulated how respondent had serious difficulty in controlling that impulse, pointing out how his efforts to approach women he did not know for sex while he was on parole continued, and even escalated, despite warnings from the police and his parole officer that they were inappropriate and needed to cease.
Cox testified that she diagnosed respondent with other specified personality disorder with antisocial traits, gave him a provisional diagnosis of major depressive disorder, and further diagnosed him as exhibiting psychopathic traits and hypersexuality. She testified how these diagnoses predisposed respondent to commit sex offenses given his sexual preoccupation and his "unusual cognitive distortions that women want him to be sexual [and] that women want him to force himself on them," while his other specified personality disorder with antisocial traits and psychopathy made him willing to act on those urges and "take what he wants when he wants it without regard to how the other person is feeling or reacting." Cox further testified as to respondent's serious difficulty in controlling that conduct, pointing to his lack of sex offender treatment since 2015, the strength of his cognitive distortions regarding women and the total disregard for rules he exhibited in his numerous attempted or actual escapes from confinement, his poor prison disciplinary record and his violating the conditions governing his conduct toward women while he was on parole.
The jury determined from the foregoing proof that respondent suffered from a mental abnormality, and we have no difficulty concluding that there was a valid line of reasoning from which they could do so (see Matter of State of New York v David J., 167 AD3d 1251, 1254 [3d Dept 2018], lv denied 32 NY3d 919 [2019]; Matter of Christopher PP. v State of New York, 151 AD3d 1334, 1337 [3d Dept 2017], lv denied 30 NY3d 903 [2017]). Counsel for respondent cross-examined petitioner's witnesses and attempted, in particular, to undermine the opinions of Cox and Green. The jury nevertheless found that testimony to be credible and, according deference to that assessment of credibility, we are further satisfied that the verdict is not against the weight of the evidence (see Matter of State of New York v Jamie KK., 168 AD3d 1231, 1233 [3d Dept 2019]; Matter of State of New York v Timothy BB., 113 AD3d at 21-23).
Turning to the dispositional hearing, "[f]ollowing a determination that a respondent is a detained sex offender who suffers from a mental abnormality, the court must then 'consider whether the respondent is a dangerous sex offender requiring confinement or a sex offender requiring strict and intensive supervision' " (Matter of State of New York v Tony A., 212 AD3d 1056, 1057 [3d Dept 2023], quoting Mental Hygiene Law § 10.07 [f]; see Matter of State of New York v Andrew [*5]D., 114 AD3d 1043, 1043 [3d Dept 2014]). This reflects the distinction drawn in the Mental Hygiene Law "between sex offenders who have difficulty controlling their sexual conduct and those who are unable to control it. The former are to be supervised and treated as outpatients and only the latter may be confined" (Matter of State of New York v Michael M., 24 NY3d 649, 659 [2014] [internal quotation marks omitted]; accord Matter of State of New York v David HH., 205 AD3d 1105, 1106 [3d Dept 2022]). The issue at a dispositional hearing accordingly distills to whether petitioner carried its burden of proving, "by clear and convincing evidence, that respondent is a dangerous sex offender requiring confinement" (Matter of State of New York v Justin R., 187 AD3d 1464, 1465-1466 [3d Dept 2020]). "A dangerous sex offender requiring confinement is defined as 'a person who is a detained sex offender suffering from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility' " (id. at 1465, quoting Mental Hygiene Law § 10.03 [e]).
Petitioner here presented the testimony of Cox, who rendered her opinion after reviewing respondent's long criminal history, his conduct while imprisoned and his inability to comply with the conditions of his parole, documents such as Green's evaluation report and letters authored by respondent in which he expressed the unfounded belief that the couple who housed him while he was on parole no longer wanted to help him because the wife was sexually interested in him, and a conversation in which respondent's sister described to Cox how respondent attempted to rape a woman in the early 1980s because he believed that the woman wanted him to do it.[FN3] Cox testified as to how this proof reflected that respondent had longstanding "idiosyncratic and extreme offense-supportive beliefs that justify his sexual aggression with women" that continued to exist and were in no way under control, strongly predisposing him to committing sex offenses. She further observed that, given the toxic mix of his hypersexuality, cognitive distortions, penchant for rationalizing his behavior and viewing himself as the victim, and his documented impulsivity and unwillingness to comply with rules or supervision, he would be unable to control his behavior and would be likely to commit sex offenses if released to the community under supervision. Cox accordingly opined, in agreement with the opinion expressed by Green in her report, that respondent was likely to be a danger to others and commit sex offenses if he were not confined to a secure treatment facility. Supreme Court credited that proof over the testimony of respondent, who denied some of the allegations regarding his prior behavior, expressing his belief that his behavior while out on parole had been "blown way out of [*6]proportion" and assuring the court that he had learned his lesson and would comply with any rules if released to supervision despite having attempted to escape from the secure treatment facility where he was confined a few months earlier. According deference to the credibility determinations of Supreme Court, we agree with it that "petitioner met its burden of establishing, by clear and convincing evidence, that respondent suffers from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that he is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Matter of State of New York v Robert A., 187 AD3d 1326, 1330 [3d Dept 2020] [internal quotation marks, brackets and citation omitted], lv denied 36 NY3d 908 [2021]; see Matter of State of New York v Justin R., 187 AD3d at 1467).
Garry, P.J., Fisher, Powers and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: At trial, respondent stipulated that he was a detained sex offender within the meaning of Mental Hygiene Law article 10 (see Mental Hygiene Law § 10.03 [g] [4]).

Footnote 2: The order at issue was entered with the Saratoga County Clerk on January 27, 2023, and respondent did not take an appeal until March 7, 2023. Respondent suggests that this may constitute a problem in that "the basic period to take an appeal or move for leave to appeal is 30 days, which generally begins to run 'after service by a party upon the appellant of a copy of the judgment or order appealed from and written notice of its entry' " (Econopouly v Econopouly, 167 AD3d 1378, 1378 [3d Dept 2018], quoting CPLR 5513 [a]). In the absence of any record evidence establishing when petitioner served the order upon respondent with notice of entry, however, we have no reason to conclude that the appeal taken by respondent was untimely (see id. at 1379).

Footnote 3: To the limited extent that respondent's arguments regarding the admissibility of hearsay evidence relied upon by Cox and Green are preserved for our review and actually involve evidence that should not have been considered, "there is nothing in the record to suggest that [Supreme Court] improperly relied on any such hearsay in making its factual findings" (Matter of Sincere KK. v State of New York, 129 AD3d 1254, 1255 [3d Dept 2015], lv denied 26 NY3d 906 [2015]).