Matter of State of New York v Justin Q. (2025 NY Slip Op 07258)

Matter of State of New York v Justin Q.

2025 NY Slip Op 07258

Decided on December 24, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 24, 2025

CV-24-1355
[*1]In the Matter of State of New York, Respondent,
vJustin Q., Appellant.

Calendar Date:November 18, 2025

Before:Reynolds Fitzgerald, J.P., Lynch, Ceresia, Fisher and McShan, JJ.

Angela Kelley, East Greenbush, for appellant.
Letitia James, Attorney General, Albany (Frank Brady of counsel), for respondent.

Reynolds Fitzgerald, J.P.
Appeal from an order of the Supreme Court (David Weinstein, J.), entered July 8, 2024 in Albany County, which granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 10, to revoke respondent's regimen of strict and intensive supervision and treatment, found respondent to be a dangerous sex offender and confined him to a secure treatment facility.
Respondent has a history of sexually abusing young children dating back to his childhood. In 1990, respondent was adjudicated a juvenile delinquent for sexual abuse in the second degree for sexually abusing multiple male children between the ages of four and nine. In 1996, respondent pleaded guilty to sexual abuse in the first degree for sexually abusing two children ages two and three, while he was babysitting them. In 2005, respondent pleaded guilty to the underlying offense of two counts — course of sexual conduct against a child in the first degree — for sexually abusing an 11-year-old and an eight-year-old who were the children of a friend he was staying with for extended periods of time. In 2019, as respondent's prison term neared an end, petitioner commenced a Mental Hygiene Law article 10 proceeding seeking to confine respondent to a secure treatment facility. Respondent consented to a finding that he suffered from a mental abnormality, waived his right to a dispositional hearing and consented to an order releasing him into the community under a regimen of strict and intensive supervision and treatment (hereinafter SIST).
Within one month of being released, respondent was alleged to have violated his conditions of SIST and postrelease supervision and was subsequently found to have violated his parole. Respondent was reincarcerated for 24 months, and in 2022 respondent was again released to SIST. In 2023, petitioner commenced this proceeding to revoke respondent's release claiming that he had violated numerous SIST conditions. Following a revocation hearing, Supreme Court found, by clear and convincing evidence, that respondent is a dangerous sex offender requiring confinement. Respondent appeals.
Petitioner, as the party seeking to revoke respondent's release to SIST, bears the burden of establishing by clear and convincing evidence that respondent is a dangerous sex offender requiring civil confinement (see Mental Hygiene Law §§ 10.07 [f]; 10.11 [d] [4]; Matter of State of New York v David HH., 205 AD3d 1105, 1105 [3d Dept 2022]). Mental Hygiene Law § 10.03 (e), defines a dangerous sex offender requiring confinement as "a person who is a detained sex offender suffering from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility." "In other words, the Mental Hygiene Law draws a distinction between sex offenders who have difficulty controlling their sexual conduct and [*2]those who are unable to control it. The former are to be supervised and treated as outpatients and only the latter may be confined" (Matter of State of New York v Andrew VV., 217 AD3d 1201, 1203 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of State of New York v Robert A., 187 AD3d 1326, 1328 [3d Dept 2020], lv denied 36 NY3d 908 [2021]).
Respondent contends that Supreme Court erred in finding that petitioner proved by clear and convincing evidence that he is a dangerous sex offender requiring confinement. At the revocation hearing, petitioner offered the testimony of two parole officers employed by the Department of Corrections and Community Supervision in the Niagara Falls parole office. Both officers stated that they oversee sex offender parolees to ensure they are abiding by their parole conditions. Each officer testified that he or she conducted a search of his or her parolee's cellular phone and determined that there were photographs and texts sent from respondent, including explicit photographs of naked men, women and children. Some of the photographs depicting the naked children had names and ages attached to them and that "they were stated very young. The youngest one . . . was, maybe, six." There were also text messages referencing minor children with statements describing acts of a sexual nature involving them. Additionally, respondent's parole officer testified that after she was contacted by the Niagara Falls office, she conducted a search of respondent's cellular phone and found images of naked males, females and individuals who appeared to be less than 18 years of age,[FN1] photographs of his treatment providers, sexually explicit materials, digital images and sexual chats. Respondent's supervisor stated that respondent admitted to communicating with two sex offender parolees residing in the Niagara Falls area.
Petitioner also offered the evaluation report and testimony of Shari Lo-Rhoden, a psychiatric examiner with the Office of Mental Health Division of Forensic Services. Lo-Rhoden testified that she reviewed the violation incident report and SIST reports and spoke to respondent's treatment providers. Lo-Rhoden diagnosed respondent with pedophilic disorder with condition of hypersexuality. Utilizing the Static-99 recidivism test, Lo-Rhoden assessed respondent's likelihood to reoffend to be in the above average risk level. Notably, Lo-Rhoden specifically stated that her task on these matters is to determine whether respondent is able to continue to manage his behaviors under SIST, not to determine if respondent actually committed a new offense. Accordingly, Lo-Rhoden opined that based on "the totality of the behaviors as presented here. . . . it speaks to his thought process, his deviant sexual arousal[,] . . . poor judgment, [and] poor coping," and concluded that respondent is a dangerous sex offender requiring confinement.
Jeffrey C. Singer, a psychologist, testified on behalf of respondent. Singer [*3]testified that he utilized the SVR-20 V2, a reality-based risk management tool, and assessed respondent's likelihood to reoffend to be in the upper end of the low range. Singer stated that while respondent's pedophilic disorder is a "salient risk factor that needs to be contained[,] . . . SIST . . . [is] an extremely good containment model" and, although respondent "has been doing okay on SIST[, h]e clearly violated some . . . of these stipulations, but there isn't a live victim here." Singer opined that respondent is not a dangerous sex offender requiring confinement and could be managed under SIST.
While the experts differed as to whether respondent is a dangerous sex offender requiring confinement, Supreme Court was in the best position to evaluate the weight and credibility of the conflicting expert testimony and was free to credit the conclusions of Lo-Rhoden over that of Singer (see Matter of State of New York v Tony A., 212 AD3d 1056, 1060 [3d Dept 2023]; Matter of Craig W. v State of New York, 151 AD3d 1135, 1137 [3d Dept 2017]). Thus, according appropriate deference to Supreme Court's credibility determinations, and based upon our review of the record, we discern no reason to disturb the court's finding that petitioner met its burden of proving by clear and convincing evidence that respondent is a dangerous sex offender requiring civil confinement (see Matter of State of New York v David HH., 205 AD3d at 1107; Matter of State of New York v Justin R., 187 AD3d 1464, 1467 [3d Dept 2020]).
Respondent next asserts that the testimony given by the parole officers — which described the child sexual exploitation material — violated the best evidence rule, his due process rights to notice and the opportunity to be heard. "[T]he decision to admit or preclude hearsay basis evidence at a[ Mental Hygiene Law] article 10 trial rests with the trial court's sound discretion, and its decision should not be disturbed unless it results in a clear violation of the respondent's due process rights or otherwise constitutes an abuse of discretion as a matter of law" (Matter of State of New York v John S., 23 NY3d 326, 344 [2014]). Regarding respondent's due process argument, it is unpreserved as it is raised for the first time on appeal (see Matter of State of New York v James K., 135 AD3d 35, 39 n [3d Dept 2015]; Matter of State of New York v Lonard ZZ., 100 AD3d 1279, 1280 [3d Dept 2012]).
The "best evidence rule simply requires the production of an original writing where its contents are in dispute and sought to be proven. . . . Under a long-recognized exception to the best evidence rule, secondary evidence of the contents of an unproduced original may be admitted upon threshold factual findings by the trial court that the proponent of the substitute has sufficiently explained the unavailability of the primary evidence" (Schozer v William Penn Life Ins. Co. of N.Y., 84 NY2d 639, 643-644 [1994]; see People v Haggerty, 23 NY3d 871, 876 [2014]). Respondent objected [*4]when petitioner introduced the disputed evidence through the parole officers' testimony, arguing that the original photographs and text messages contained on the cellular phones are in possession of petitioner. The parole officers testified that they did not have possession of the cellular phones as the phones were turned over to law enforcement entities shortly after they conducted their search of each phone. Petitioner confirmed that it never had possession of the phones containing the original photographs and texts, and, more importantly, it never forwards or distributes the pornography contents of cellular phones, especially if it involves children, as it is inappropriate, is not being offered for the truth and respondent is not being charged with a crime. Under these circumstances, loss has been established and the parole officers' testimony as to the photographs and texts are admissible (see Schozer v William Penn Life Ins. Co. of N.Y., 84 NY2d at 647). Nevertheless, assuming arguendo that the parole officers' testimony should have been excluded, such error was harmless given that Supreme Court placed little emphasis on this evidence and instead relied on other evidence relating to respondent's "sexual control," including respondent expressing his sexual desires regarding minors, taking pictures of women without their permission, the number and severity of respondent's crimes involving sexual misconduct with children and Lo-Rhoden's expert opinion (see People v Haggerty, 23 NY3d at 876; Matter of David JJ. v Tara KK., 240 AD3d 984, 985 [3d Dept 2025]; Matter of State of New York v Mark S., 87 AD3d 73, 80 [3d Dept 2011], lv denied 17 NY3d 714 [2011]).
Lynch, Ceresia, Fisher and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: These images did not involve nudity.