Matter of State of New York v Philip II. (2026 NY Slip Op 01261)

Matter of State of New York v Philip II.

2026 NY Slip Op 01261

Decided on March 5, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 5, 2026

CV-24-1638
[*1]In the Matter of State of New York, Respondent,
vPhilip II., Appellant.

Calendar Date:January 14, 2026

Before:Reynolds Fitzgerald, J.P., Ceresia, Fisher, McShan and Mackey, JJ.

Danielle Neroni Reilly, Albany, for appellant.
Letitia James, Attorney General, Albany (Jonathan D. Hitsous of counsel), for respondent.

Ceresia, J.
Appeal from an order of the Supreme Court (Adam Silverman, J.), entered August 1, 2024 in Rensselaer County, which granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 10, to find respondent to be a dangerous sex offender and confined him to a secure treatment facility.
In 2008, respondent was convicted of sexually abusing an eight-year-old girl, his cousin's niece, and, in 2013, respondent was convicted of sexually abusing his eight-year-old daughter. Following each conviction, respondent was incarcerated, incurring numerous disciplinary infractions during his prison stints. Respondent also violated the conditions of his parole multiple times and, during his second parole term, respondent was reincarcerated twice. In 2021, in anticipation of respondent being released from prison, petitioner filed a petition seeking an order authorizing civil management of respondent pursuant to Mental Hygiene Law article 10. Upon the parties' agreement, Supreme Court ordered respondent's release to the community under a regimen of strict and intensive supervision and treatment (hereinafter SIST). After respondent violated several conditions of SIST by, among other things, cutting off his GPS monitoring device and absconding from the program, petitioner filed a second petition, in 2024, this time seeking to revoke respondent's SIST and have him civilly confined. Following a dispositional hearing at which two psychologists testified, one for petitioner and one for respondent, the court granted petitioner's application, revoking SIST and ordering that respondent be confined in a secure treatment facility. Respondent appeals.
A sex offender is an appropriate candidate for SIST when he or she is "a detained sex offender who suffers from a mental abnormality but is not a dangerous sex offender requiring confinement" (Mental Hygiene Law § 10.03 [r]). If it is petitioner's position that a respondent is, in fact, a dangerous sex offender who should be confined, it is petitioner's burden to demonstrate, by clear and convincing evidence, that the respondent has "such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses" if not so confined (Mental Hygiene Law § 10.03 [e]; see Matter of State of New York v Michael M., 24 NY3d 649, 659 [2014]; Matter of State of New York v Andrew VV., 217 AD3d 1201, 1203 [3d Dept 2023]; Matter of State of New York v David HH., 205 AD3d 1105, 1106 [3d Dept 2022]). In determining whether a sex offender has a present inability to control his or her sexual conduct, Supreme Court may rely upon all the relevant facts and circumstances, including nonsexual violations of SIST, as it "need not await further sexual offending" (Matter of State of New York v George N., 160 AD3d 28, 31 [4th Dept 2018]; see Matter of State of New York v William J., 151 AD3d 1890, 1891 [4th Dept 2017]). At the same time, "a [*2]respondent's mere struggling with sexual urges is insufficient to show inability to control" (Matter of State of New York v Anthony R., 228 AD3d 541, 545 [1st Dept 2024]).
Here, petitioner presented testimony from its psychologist, Jillian Pino, whose written report was also admitted into evidence. Pino, who based her opinions upon her review of respondent's records and her interviews with his parole officer and treatment providers, diagnosed respondent with pedophilic disorder, severe alcohol use disorder and antisocial personality disorder. Regarding the pedophilia, Pino noted that on two separate occasions in 2018 and 2020 ? both while he was on parole ? respondent possessed an unauthorized cell phone and used it to view pornography by searching for depictions of girls being forcibly raped by their fathers, subject matter that was reminiscent of respondent's own prior sex offense history. At the time of the 2018 incident, petitioner was reported to have been in contact with one of his victims, in violation of an order of protection, and in 2020, he was found in possession of other sexually explicit images of young girls. In late 2023, Pino saw a decline in respondent's sex offender group participation and an increase in his recidivism risk. Also in 2023, respondent confessed his continued attraction to prepubescent children.
As for respondent's alcoholism, Pino observed that respondent had self-reported both that he was intoxicated when he sexually abused one of his victims and that his drinking was related to his sexual offending. Respondent admitted to a long struggle with alcohol abuse that had led him to lose jobs and apartments. In 2023, after having attended numerous substance abuse treatment programs, respondent failed a breathalyzer test and then admitted to drinking covertly at least three times while on SIST. At that time, he was reported to have been having difficulties with his motivation and participation in substance abuse treatment and was not attending self-help groups. His relapse was also connected to a decline in his interest in participating in sex offender treatment.
With respect to respondent's antisocial personality disorder, Pino noted a long history of resistance to rules and supervision, as well as impulsivity and poor problem solving, which she characterized as risk factors for reoffending. Respondent had absconded from law enforcement and supervision on multiple occasions, including as late as 2023. In that instance, after respondent failed a polygraph examination, a search of the group home where he was living turned up yet another unauthorized cell phone, of which respondent denied ownership while admitting that his fingerprints would be on it. Upon being advised that the phone's contents would be searched, respondent appeared nervous, asked if he would be arrested and then cut off his GPS monitoring device and absconded from the group home, only to be found later at an unauthorized "flop house."
Altogether, [*3]respondent's diagnosis of pedophilia with an admitted current sexual attraction to children, his history of sexually assaulting children including while intoxicated, his recent relapse into alcoholism, his repeated deceptive acts of secretly possessing unauthorized cell phones and viewing deviant child pornography and his instances of absconding from and otherwise violating the conditions of parole and SIST provided clear and convincing evidence that respondent's inability to control his sexual behavior rendered him a dangerous sex offender requiring confinement (see Matter of State of New York v Joel Z., 240 AD3d 954, 960-961 [3d Dept 2025]; Matter of State of New York v David HH., 205 AD3d at 1107; Matter of State of New York v Jamaal A., 167 AD3d 1526, 1527 [4th Dept 2018], lv denied 33 NY3d 902 [2019]). This is true notwithstanding the proffered opinion of Jeffrey Singer, respondent's psychologist, that respondent did not require confinement and could instead continue on SIST with additional mental health treatment. "Supreme Court, as the trier of fact, is in the best position to evaluate the weight and credibility of any conflicting expert testimony presented, and its determinations are accorded deference upon our review" (Matter of State of New York v Tony A., 212 AD3d 1056, 1058 [3d Dept 2023] [citations omitted]; see Matter of State of New York v Robert A., 187 AD3d 1326, 1330 [3d Dept 2020], lv denied 36 NY3d 908 [2021]). We defer to the court's determination that Singer's testimony was less reliable than Pino's because Singer did not interview any of respondent's collateral contacts, his review of respondent's records was less thorough than Pino's and he did not recall certain key aspects of respondent's history.
Reynolds Fitzgerald, J.P., Fisher, McShan and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.