Matter of State of New York v Tony A. (2023 NY Slip Op 00357)

Matter of State of New York v Tony A.

2023 NY Slip Op 00357

Decided on January 26, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 26, 2023

533968
[*1]In the Matter of State of New York, Respondent,
v
Tony A., Appellant.

Calendar Date:December 14, 2022 

Before:Egan Jr., J.P., Clark, Pritzker, Fisher and McShan, JJ. 

Sheila E. Shea, Mental Hygiene Legal Service, Albany (Shannon Stockwell of counsel), for appellant.
Letitia James, Attorney General, Albany (Kathleen M. Treasure of counsel), for respondent.

McShan, J.
Appeal from an order of the Supreme Court (John T. Ellis, J.), entered August 11, 2021 in Franklin County, which granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 10, to find respondent to be a dangerous sex offender and confined him to a secure treatment facility.
Respondent has a lengthy history of sex offense convictions beginning in 1986, when respondent pleaded guilty to robbery in the first degree, attempted rape in the first degree, burglary in the second degree and grand larceny in the third degree, stemming from two separate incidents that occurred within five days of each other. As to the first incident, respondent followed the victim to her home, where he deceived her into believing that he was inquiring about a vehicle for sale in her driveway, before he forced his way into her residence and proceeded to physically assault and rape her. Days later, respondent forced his way through the window of another victim's house, threw the victim on a bed and began to choke her before eventually attempting to rape her. Respondent was ultimately sentenced to an aggregate term of 6 to 18 years of incarceration for those offenses and other unrelated crimes. In 2007, respondent was arrested and charged with rape in the third degree, criminal sexual act in the third degree and stalking in the third degree, stemming from an incident in which he was accused of sexually assaulting a former paramour who suffered from disabilities stemming from a stroke. Respondent pleaded guilty to harassment in the first degree and assault in the third degree and was sentenced to a six-month period of incarceration. Finally, as to his qualifying offense, respondent was convicted of sexual abuse in the first degree in May 2013, stemming from an incident in which he had climbed through a window while the victim was sleeping and forcefully penetrated the victim's vagina and anus with his fingers and forced her mouth onto his penis. He was eventually sentenced to seven years in prison and 15 years of postrelease supervision.
As respondent's anticipated release to the community neared, his matter was referred to a case review team from the Office of Mental Health to be evaluated and determine whether he was a sex offender requiring civil management (see Mental Hygiene Law § 10.03 [q]). Nancy Ives, a licensed psychologist with the Office of Mental Health, evaluated respondent and issued her report in July 2019, concluding that respondent was a detained sex offender suffering from a mental abnormality (see Mental Hygiene Law § 10.03 [g], [i]). Accordingly, in August 2019, petitioner commenced this proceeding seeking an order finding that respondent was a detained sex offender requiring civil management under Mental Hygiene Law article 10.
Supreme Court thereafter held a probable cause hearing and, after receiving testimony from petitioner's expert witness who stated that in her professional opinion respondent exhibited characteristics [*2]that would support the finding of him being a dangerous sex offender requiring civil management, the court issued an order for probable cause. In August 2020, following a trial at which expert witnesses for petitioner and respondent testified, the court issued a decision finding that respondent possessed a mental abnormality within the definition of Mental Hygiene Law article 10. After trial and prior to a scheduled dispositional hearing, respondent suffered a stroke in November 2020 that paralyzed and significantly weakened the right side of his body, including his extremities. Following a dispositional hearing, the court nevertheless found defendant to be a dangerous sex offender requiring confinement and directed that he be committed to a secure treatment facility. This appeal by respondent ensued.
On appeal, respondent does not dispute that he suffers from a mental abnormality as defined in Mental Hygiene Law § 10.03 (i) and limits his challenge to Supreme Court's subsequent determination that he is a dangerous sex offender requiring confinement (see Mental Hygiene Law §§ 10.03 [e]; 10.07 [f]). In this respect, respondent contends, in sum and substance, that his stroke renders him physically incapable of engaging in sex offending behavior similar to the behavior underlying his various sexual offenses, and that he should instead be released to strict and intensive supervision and treatment (see Mental Hygiene Law § 10.03 [r]).
We disagree. Following a determination that a respondent is a detained sex offender who suffers from a mental abnormality, the court must then "consider whether the respondent is a dangerous sex offender requiring confinement or a sex offender requiring strict and intensive supervision" (Mental Hygiene Law § 10.07 [f]). Pursuant to Mental Hygiene Law § 10.03 (e), a dangerous sex offender requiring confinement is defined as "a detained sex offender suffering from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility." "In contrast, a sex offender requiring strict and intensive supervision is 'a detained sex offender who suffers from a mental abnormality but is not a dangerous sex offender requiring confinement' " (Matter of State of New York v Justin R., 187 AD3d 1464, 1465 [3d Dept 2020], quoting Mental Hygiene Law § 10.03 [r]). The burden lies with petitioner to prove, "by clear and convincing evidence, that respondent is a dangerous sex offender requiring confinement"(id. at 1465-1466; see Mental Hygiene Law § 10.07 [f]; Matter of State of New York v Barry W., 114 AD3d 1093, 1094 [3d Dept 2014]). Supreme Court, as the trier of fact, is in the best position to evaluate the weight and credibility of any conflicting expert testimony presented, and its determinations are accorded deference upon our review (see Matter of State [*3]of New York v Justin R., 187 AD3d at 1466; Matter of State of New York v James K., 135 AD3d 35, 39 [3d Dept 2015]; Matter of State of New York v Walter W., 94 AD3d 1177, 1180 [3d Dept 2012], lv denied 19 NY3d 810 [2012]).
At the dispositional hearing, petitioner offered, among other things, the expert testimony and report of Stuart Kirschner, a psychologist, alongside the report and testimony of Ives, who both diagnosed respondent with antisocial personality disorder (hereinafter ASPD) and psychopathy.[FN1] Both Ives and Kirschner concluded that respondent was a dangerous sex offender requiring confinement based upon, among other things, the actuarial risk factors that suggested a high risk for reoffending. In this respect, both Ives and Kirschner opined that respondent's score on the STATIC-99R risk assessment suggested that his risk for reoffending was "well above average." In further support of her conclusion, Ives pointed to the various traits that lent to respondent's diagnosis of ASPD, such as his "callousness[ and] lack of affect," and that he "had a high level of . . . psychopathy . . . includ[ing] . . . his disregard of laws, his disregard for the welfare of others[ and] his willingness to use force without regard . . . for the victim's reported distress." Ives further noted respondent's "willingness to exploit [the] vulnerabilities of his victims . . . in pursuit of his own sexual gratification" rather than pursuing any willing partners that, by respondent's own account, were available to him. Ives concluded that respondent had an inability to control his sexual behavior, evidenced by his disregard of the significant consequences of his actions, his failure to comprehend the wrongfulness of his behavior and his inclination to blame women for the consequences of his own conduct. Kirschner testified similarly, opining that respondent displayed a majority of the factors in the Sexual Violence Risk-20, Version 2 risk assessment for sexual recidivism, including sexually deviant interests, diverse and chronic sexual offending, infliction of serious physical injury during the offenses, use of psychological coercion and escalation of offending patterns, among others. Beyond the aforementioned actuarial factors, Kirschner also considered respondent's diagnoses of ASPD and psychopathy, noting respondent's persistence in reoffending despite the criminal consequences he had endured as well as his refusal to accept responsibility for his actions. In this respect, both experts also noted respondent's consistent refusal to participate in and benefit from sex offender treatment. Kirschner elaborated that respondent's risk of reoffending was elevated owing to his failure to acknowledge and take responsibility for his past sexually deviant behavior.
As to the physical deficits resulting from respondent's stroke and the effect on his risk of reoffending, both Ives and Kirschner noted that respondent's medical records indicated that the left side of respondent's [*4]body remained unaffected by his stroke. Ives also noted that there was no indication that respondent was permanently disabled, that there was any effect on his ability to develop or maintain an erection, or that his libido had been altered. Ives explained that respondent's qualifying offenses involved the forcible use of his hand and arm, and that his disability did not affect his ability to do so in the future using those parts of his body unaffected by the stroke. Kirschner noted that respondent had engaged in a diverse range of sexual offending behavior, including digital penetration of his victims. Both experts concluded that respondent's sexual deviancy was unaffected, even if his ability to commit offenses in a manner similar to his past offenses was compromised. To this end, Kirschner concluded that respondent maintained the ability "to engage in sexual deviant conduct within his capacities." Accordingly, both Ives and Kirschner stated that respondent's physical limitations resulting from his stroke did not change their overall conclusion that he was a dangerous sex offender requiring confinement.
Respondent presented the testimony of his physical therapist, who testified that, at the time of the hearing, respondent continued to experience weakness on the right side of his body. The therapist testified that the prognosis for respondent's right arm was poor and that he would most likely not be able to use the arm in the future. The therapist also noted that respondent was making progress regaining his ability to walk but was currently utilizing the assistance of a quad cane and could not walk at normal speed. Jeffrey Singer, an independent psychologist, also testified on behalf of respondent and stated that, while he initially concluded in his May 2020 report that respondent fit the definition of a dangerous sex offender requiring confinement, his opinion had changed in light of respondent's recent stroke. Singer elaborated on that change, noting that respondent's stroke had significantly debilitated him, which decreased his level of dangerousness, as it "preclude[d his] ability to commit the kind of sex offenses that he's done in the past." According to Singer, respondent's record demonstrated that his prior sexual offenses were aggressive and impulsive. In this respect, Singer opined that respondent's psychological profile would not lead him to adapt his deviant behavior and engage in fondling or groping.
While the experts differed as to respondent's likelihood to adapt his sexual behavior to conform to his disabilities in assessing his likelihood to reoffend, Supreme Court was in the best position to evaluate matters of credibility pertaining to the testimony of the parties' respective experts and was free to credit the conclusions of Ives and Kirschner over those of Singer (see Matter of State of New York v Barry W., 114 AD3d at 1095; Matter of State of New York v Kenneth BB., 93 AD3d 900, 902 [3d Dept 2012]; Matter of State of New [*5]York v Blair, 87 AD3d 1327, 1327 [4th Dept 2011]). Therefore, according the appropriate deference to Supreme Court's credibility determinations, and based upon our independent review of the entire record, we discern no basis to overturn Supreme Court's determination that petitioner clearly and convincingly established that respondent is a dangerous sex offender requiring civil confinement (see Mental Hygiene Law § 10.7 [f]; Matter of State of New York v David HH., 205 AD3d 1105, 1107 [3d Dept 2022]; Matter of State of New York v James K., 135 AD3d at 40; Matter of State of New York v Barry W., 114 AD3d at 1095; Matter of Sincere KK. v State of New York, 111 AD3d 1083, 1085 [3d Dept 2013], lv denied 22 NY3d 862 [2014]).
Egan Jr., J.P., Clark, Pritzker and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Kirschner also had diagnosed respondent with narcissistic personality disorder.