Matter of State of New York v Christopher GG. (2026 NY Slip Op 01566)

Matter of State of New York v Christopher GG.

2026 NY Slip Op 01566

Decided on March 19, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 19, 2026

CV-24-0910
[*1]In the Matter of State of New York, Respondent,
vChristopher GG., Appellant.

Calendar Date:January 6, 2026

Before:Garry, P.J., Reynolds Fitzgerald, McShan, Powers and Mackey, JJ.

Danielle Neroni Reilly, Albany, for appellant.
Letitia James, Attorney General, Albany (Frederick A. Brodie of counsel), for respondent.

McShan, J.
Appeal from an order of the Supreme Court (Robert Muller, J.), entered February 7, 2024 in Warren County, which granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 10, to find respondent to be a dangerous sex offender and confined him to a secure treatment facility.
In 2016, respondent pleaded guilty to one count of criminal sexual act in the second degree and was sentenced to a prison term of seven years, to be followed by 13 years of postrelease supervision (see Penal Law former § 130.45 [1]).[FN1] The conviction stemmed from a series of incidents between the end of 2014 and the summer of 2015, when respondent was 36 and 37 years old, in which a male victim between 14 and 15 years old reported that respondent had repeatedly sexually abused him by engaging in, among other things, various acts of sodomy. This conduct began approximately one year after respondent was discharged from parole supervision following a 2004 conviction, pursuant to a guilty plea, for anally penetrating a nine-year-old boy whom he was babysitting. That conduct, in turn, occurred just months after respondent was discharged from probation on a conviction for endangering the welfare of a different child.
Upon respondent's anticipated release to the community, petitioner commenced this Mental Hygiene Law article 10 proceeding seeking his confinement in a secure treatment facility as a dangerous sex offender. Following a probable cause hearing, Supreme Court found probable cause to believe that respondent was a dangerous sex offender requiring civil management. Thereafter, respondent admitted that he suffered from a mental abnormality as defined in Mental Hygiene Law article 10 (see Mental Hygiene Law § 10.03 [i]) and waived his right to trial on that issue. After a dispositional hearing, Supreme Court found respondent to be a dangerous sex offender requiring civil confinement and ordered him to be committed to a secure treatment facility. Respondent appeals.
The primary inquiry on appeal is limited to Supreme Court's subsequent determination that respondent is a dangerous sex offender requiring confinement (see Mental Hygiene Law §§ 10.03 [e]; 10.07 [f]), as he previously consented to a finding that he suffers from a mental abnormality as defined in Mental Hygiene Law § 10.03 (i). Respondent argues that petitioner failed to meet its burden of demonstrating by clear and convincing evidence that he is a dangerous sex offender requiring confinement and insists that he should be released to strict and intensive supervision and treatment (hereinafter SIST) (see Mental Hygiene Law § 10.03 [r]).[FN2] We disagree.
"Following a determination that a respondent is a detained sex offender who suffers from a mental abnormality, the court must then 'consider whether the respondent is a dangerous sex offender requiring confinement or a sex offender requiring strict and intensive supervision' " (Matter of State of New York v Tony A., 212 AD3d 1056, 1057 [3d Dept [*2]2023], quoting Mental Hygiene Law § 10.7 [f]; accord Matter of State of New York v Joel Z., 240 AD3d 954, 959 [3d Dept 2025]). A " '[d]angerous sex offender requiring confinement' means a person who is a detained sex offender suffering from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.3 [e]). "A sex offender requiring SIST, in contrast, is 'a detained sex offender who suffers from a mental abnormality but is not a dangerous sex offender requiring confinement' " (Matter of State of New York v Andrew VV., 217 AD3d 1201, 1203 [3d Dept 2023], quoting Mental Hygiene Law § 10.3 [r]). Said simply, "the Mental Hygiene Law draws a distinction between sex offenders who have difficulty controlling their sexual conduct and those who are unable to control it. The former are to be supervised and treated as outpatients and only the latter may be confined" (Matter of State of New York v Justin Q., 244 AD3d 1652, 1654 [3d Dept 2025] [internal quotation marks and citations omitted]). At a dispositional hearing, "[t]he burden lies with petitioner to prove, by clear and convincing evidence, that respondent is a dangerous sex offender requiring confinement" (Matter of State of New York v Tony A., 212 AD3d at 1058 [internal quotation marks and citation omitted]; see Mental Hygiene Law § 10.7 [f]).
Abby Oberriter, a psychologist with the Office of Mental Health, testified for petitioner at the dispositional hearing, and her report with its addendum was received into evidence. Oberriter testified that she had diagnosed respondent with a mild intellectual disability, posttraumatic stress disorder and unspecific mood disorder. According to Oberriter, respondent's intellectual disability causes him to display poor behavioral control and identify emotionally with children rather than adults, his mood disorder exacerbates his tendency to engage in impulsive behaviors that gratify his immediate needs and his posttraumatic stress disorder prompts intrusive thoughts of his own childhood abuse that trigger his sexual offenses. Oberitter explained that respondent vacillated between accepting responsibility for his conduct and shifting blame to his victims. Further, respondent had no insight into the triggers for his conduct and, correspondingly, was unable to identify any relevant coping skills that would prevent further offenses. Oberriter testified to her Static-99R assessment and concluded that respondent presented with an above average risk for being charged and convicted of another sexual offense, which was based upon various factors, including the fact that his victim was a stranger and that he had a history of prior nonsexual violence. Consistent with her report, Oberriter noted the presence of various dynamic factors beyond those addressed in [*3]the Static-99R research that were "associated with an increased risk for sexual recidivism." Among those were respondent's noncompliance with supervision during his periods of parole and conditional release, childhood behavioral issues, lack of meaningful relationships with adults and offense-supportive attitudes, which consisted of thoughts that adults his age would be likely to exploit him and that minor children, which comprised his typical victim group, could coerce adults into sexual behavior. Oberriter further noted that, although respondent had completed sex offender treatment on one occasion, the benefits of doing so were not evident in her discussions with him, as he continued to display "limited insight into his personal risk factors." All told, Oberriter concluded that respondent was a dangerous sex offender requiring confinement, highlighting that his impulsivity renders him unable to control his sexual conduct and that supervision would be insufficient in assisting him to do so.
In opposition to petitioner's proof, respondent primarily advances the argument that the conclusions of his expert — psychologist Steven Erickson — should have been credited over Oberriter's conclusions as his expert's conclusions demonstrate that he could control his sexual conduct and that placement in SIST is more appropriate. Respondent posits that Oberriter improperly utilized a high risk, high needs sample in her Static-99R assessment as part of her determination that respondent had an elevated risk of offending in contrast to Erickson utilizing a routine sample which he purported was the more accurate measure and recommended by the authors of the instrument. Respondent emphasizes that Erickson determined that he has bipolar disorder, which is "the primary contributing condition" for respondent's sexual offenses, and that his symptoms suggest that he had been receiving insufficient psychiatric medication.
Initially, this Court notes that Oberriter explained in her testimony that the presence of various dynamic factors — which differed from Erickson's findings — warranted utilizing the higher risk pool. Moreover, Erickson's testimony suggested that the authors had "strongly cautioned" against the use of that pool but did not necessarily prohibit it. In addition, Erickson conceded that he was unable to provide an opinion regarding the appropriate medication dosage to treat respondent's bipolar disorder and that, as of the time of the hearing, respondent remained symptomatic and if released on SIST would enter the community with the primary driver of his behavior remaining insufficiently medicated. Further, it is clear from the record that respondent has been medicated for most of his life, including during the time period encompassing both of the sex offenses for which he was convicted. All told, we find no compelling justification to discard the deference owed to Supreme Court's credibility determination with respect to the expert testimony presented in [*4]this case and, with that in mind, we ultimately "conclude that the court properly found by clear and convincing evidence that respondent is a dangerous sex offender requiring confinement in a secure treatment facility" (Matter of State of New York v Justin R., 187 AD3d 1464, 1467 [3d Dept 2020] [internal quotation marks and citation omitted]; see Matter of State of New York v Tony A., 212 AD3d at 1060; Matter of State of New York v Andrew D., 114 AD3d 1043, 1044 [3d Dept 2014]). Respondent's remaining contentions, to the extent they are not addressed herein, have been considered and found unavailing.
Garry, P.J., Reynolds Fitzgerald, Powers and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The relevant elements of Penal Law former § 130.45 now constitute rape in the second degree, also a class D felony (see Penal Law § 130.30 [2], [3]).
Footnote 2: Although respondent challenges Supreme Court's dispositional determination as unsupported by legally sufficient evidence and against the weight of the evidence, that standard of review is only applicable to jury determinations with respect to the initial question on whether a respondent suffers from a mental abnormality (see e.g. Matter of State of New York v Joel Z., 240 AD3d 954, 959 [3d Dept 2025]; Matter of State of New York v Robert G., 179 AD3d 1164, 1166-1167 [3d Dept 2020], lv denied 35 NY3d 908 [2020]). Instead, our review of Supreme Court's determination at the dispositional phase of a Mental Hygiene Law article 10 proceeding entails an independent review of the evidence in the record and the reasonable inferences to be drawn therefrom "while according deference to Supreme Court's assessment of credibility" and its factual findings (Matter of State of New York v Andrew D., 114 AD3d 1043, 1044 [3d Dept 2014]; see Matter of State of New York v Justin R., 187 AD3d 1464, 1467 [3d Dept 2020]).