Matter of State of New York v John T.
2026 NY Slip Op 03705
June 11, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of State of New York, Respondent,
v
John T., Appellant.

Decided and Entered:June 11, 2026
CV-23-0440
Calendar Date: April 29, 2026
Before: Clark, J.P., Aarons, Pritzker, Mackey And Corcoran, JJ.

Danielle Neroni Reilly, Albany, for appellant, and appellant pro se.
Letitia James, Attorney General, Albany (Jonathan D. Hitsous of counsel), for respondent.

[*1]
Pritzker, J.
Appeal from an amended order of the Supreme Court (Mark Powers, J.), entered January 18, 2023 in Clinton County, which granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 10, to find respondent to be a dangerous sex offender and confined him to a secure treatment facility.
The underlying facts are more fully set forth in this Court's prior decision in this matter (195 AD3d 102 [3d Dept 2021]). Briefly, in 2005, respondent pleaded guilty to attempted kidnapping in the second degree after he attempted to abduct a high school student from a school parking lot, and was sentenced to a prison term of 12 years, to be followed by five years of postrelease supervision. In anticipation of respondent's release from prison, petitioner commenced this Mental Hygiene Law article 10 proceeding, seeking a judgment determining that respondent is a detained sex offender requiring civil management. Petitioner argued, among other things, that respondent's underlying attempted kidnapping offense, for which he was convicted prior to the effective date of Mental Hygiene Law article 10, was sexually motivated. Relevant here, respondent moved to dismiss the petition, arguing that Mental Hygiene Law § 10.07 (c) violates due process because it permits petitioner to prove by clear and convincing evidence, rather than beyond a reasonable doubt, that the conduct underlying the conviction of a designated felony was sexually motivated. Supreme Court denied the motion, finding that the statute is not facially unconstitutional. At the conclusion of the trial, the jury found that respondent's crime of attempted kidnapping was sexually motivated, respondent suffers from a mental abnormality that predisposes him to commit criminal sex offenses and he has serious difficulty in controlling such conduct (see Mental Hygiene Law § 10.03 [i]). After a dispositional hearing, the court found respondent to be a dangerous sex offender requiring civil confinement and ordered him to be committed to a secure treatment facility (see Mental Hygiene Law §§ 10.03 [e]; 10.07 [f]). Respondent appeals.
We first address respondent's argument regarding the applicable standard of proof as to the jury's determination that respondent's offense was sexually motivated. As relevant here, "[w]ith respect to those individuals who committed designated felonies before [April 13, 2007,] the effective date of article 10, . . . the element of sexual motivation will have to be established at the civil commitment trial" (Matter of State of New York v Farnsworth, 75 AD3d 14, 18 [4th Dept 2010] [internal emphasis omitted], appeal dismissed 15 NY3d 848 [2010]). Additionally, pursuant to the Sex Offender Management and Treatment Act (L 2007, ch 7 [hereinafter SOMTA]), the standard of proof for this determination is "clear and convincing evidence" (Mental Hygiene Law § 10.07 [d]; see Mental Hygiene Law § 10.07 [c]). To that end, we reject respondent's argument that this lower standard of [*2]proof violates his due process rights. Accordingly, this Court, as the First Department did, adopts the Fourth Department's approach and thorough reasoning set forth in Matter of State of New York v Farnsworth (75 AD3d at 29), and holds that as to the element of sexual motivation for the commission of a designated felony prior to the effective date of SOMTA, "due process does not require the application of [the higher reasonable doubt] standard" (id. at 30; see Matter of State of New York v Nelson, 89 AD3d 441, 442 [1st Dept 2011]; see also Addington v Texas, 441 US 418, 432-433 [1979]; Mathews v Eldridge, 424 US 319, 334-335 [1976]). Thus, Supreme Court did not err in holding that the statute is not facially unconstitutional.
We turn now to respondent's challenge to petitioner's proof that he is a detained sex offender. First, respondent's contention that the sexual motivation finding was improperly based on propensity evidence is unpreserved (see People v Fontanez, 247 AD2d 260, 260 [1st Dept 1998], lv denied 92 NY2d 897 [1998]). Furthermore, respondent's argument that the jury's verdict is not supported by legally sufficient evidence establishing that the attempted crime was sexually motivated is also unpreserved, "as he failed to move, at trial, for a directed verdict under CPLR 4401 or otherwise challenge the sufficiency of the evidence on that ground" (Matter of State of New York v Robert G., 179 AD3d 1164, 1167 [3d Dept 2020], lv denied 35 NY3d 908 [2020]; see Matter of John R. v State of New York, 242 AD3d 1571, 1572 [4th Dept 2025]).FN1
Respondent next argues that the jury's verdict finding that he suffers from a mental abnormality is against the weight of the evidence. With respect to a weight of the evidence challenge, "a jury verdict may be set aside as against the weight of the evidence only when the evidence preponderates so greatly in respondent's favor that the jury could not have reached its conclusion on any fair interpretation of the evidence" (Matter of State of New York v Joel Z., 240 AD3d 954, 958 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied ___ NY3d ___ [May 21, 2026]; see Matter of State of New York v James Z., 97 AD3d 1046, 1047 [3d Dept 2012], lv denied 20 NY3d 853 [2012]).This Court "give[s] great deference to the jury's credibility determinations and resolution of the conflicting testimony" (Matter of State of New York v Timothy BB., 113 AD3d 18,22 [3d Dept 2013] [internal quotation marks and citation omitted], appeal dismissed & lv denied 23 NY3d 941 [2014]; see Matter of State of New York v Joel Z., 240 AD3d at 959). Pertinently, "[a] mental abnormality is defined as 'a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct' " (Matter [*3]of Christopher PP. v State of New York, 151 AD3d 1334, 1336 [3d Dept 2017], lv denied 30 NY3d 903 [2017], quoting Mental Hygiene Law § 10.03 [i]; accord Matter of State of New York v Robert G., 179 AD3d at 1166). Notably, the jury is permitted to consider evidence of respondent's prior conduct in a Mental Hygiene Law article 10 proceeding to determine "whether a designated felony was sexually motivated and whether a respondent has a mental abnormality" (Matter of State of New York v Schraenkler, 108 AD3d 1087, 1088 [4th Dept 2013]; see also Matter of State of New York v Shawn X., 69 AD3d 165, 172 [3d Dept 2009], lv denied 14 NY3d 702 [2010]).
Petitioner introduced testimony from three purported victims of respondent's previous offenses. The first victim testified that she was introduced to respondent at a picnic nearly 25 years prior and accepted his assistance with picking up antique chairs. After getting into respondent's pickup truck, the first victim testified that he took her to a "secluded all[e]y way-type spot" and attempted to sexually assault her before taking her back to the picnic when she resisted. She did not report the incident to law enforcement because she was "mortified" but felt "[m]orally" compelled to come forward nearly 25 years later after seeing press releases involving respondent calling for additional information about his history. The second victim testified that in 1993 a "shadowy figure" entered her bedroom, restrained and threatened her and subsequently sexually assaulted her before fleeing. Soon after, she broke free of her restraints, sought help from a neighbor, and reported the incident to law enforcement before undergoing a rape kit examination. Eleven years later, DNA evidence identified respondent — her husband's longtime friend — as the assailant, leading to his conviction for kidnapping, though rape charges were barred by Connecticut's statute of limitations. The third victim, a former coworker of respondent, testified that in 2004 respondent lured her to his parents' house under the pretext of checking an alarm system. Once inside, respondent made persistent attempts to initiate sexual contact despite her refusals before she was able to "pull [herself] up and away from him" to escape and report the incident to law enforcement, later obtaining an order of protection. Months later, law enforcement informed her that respondent had taken undisclosed photographs of her at work, some dated after the order of protection.
As to the subject attempted kidnapping charge, the fourth victim testified that in 2005, while she was a high school student walking to her car after track practice, she saw respondent sitting in a van parked unusually close to her vehicle. As she opened her car door, respondent grabbed her forcefully from behind and covered her mouth until she struggled free and fell into her own vehicle, after which respondent told her not to tell anyone and fled. A former state trooper testified that she met with [*4]respondent in April 2015 to discuss the attempted kidnapping of the fourth victim. According to her, respondent minimized his conduct, claiming he had only been urinating near her car and covered her mouth because she was screaming in surprise. When questioned about the prior incidents involving the second and third victims, respondent reportedly insisted to the former state trooper that the 1993 encounter was consensual but admitted to attempting to sexually assault the third victim. The former state trooper also testified that respondent acknowledged possessing photographs in his van of women he had followed or stalked. A former officer for the Saratoga Springs Police Department testified that he was the lead investigator of the 2005 attempted kidnapping of the fourth victim and that he located respondent's van shortly after a witness reported its location following the incident. He stated that law enforcement arrested respondent, searched the van and recovered numerous photographs of women, including images of the second and third victims. When questioned about the incident involving the fourth victim, respondent claimed he only "wanted to talk to the [fourth victim]" and repeatedly requested to see her. A second officer from the Saratoga Springs Police Department testified that when he responded to the scene after the incident with the fourth victim and searched respondent's van, he observed that the rear passenger seats were missing, and a tarp had been laid out with rope on top in a manner that appeared as if respondent had "prepared for something."
Petitioner also presented the testimony of two clinical psychologists, Susan Cox and Stuart Kirschner. Kirschner testified that respondent's behavior was indicative of a sexual psychopath, and he opined that respondent suffers from antisocial personality disorder (hereinafter ASPD), narcissistic personality disorder and an unspecified paraphilic disorder, all reflected in his lack of remorse, deceitfulness, rule-breaking and inability to control sexual impulses — notably demonstrated by violating the third victim's order of protection by taking nonconsensual photographs of her and attempting a kidnapping of the fourth victim in front of witnesses. He further noted that, although some instruments scored respondent as low risk, sex offender treatment staff sought an "override" to high risk based on his demeanor and lack of participation in treatment. Respondent was ultimately expelled from the sex offender treatment program due to his lack of cooperation and minimizing of his peers' conduct, leading Kirschner to conclude that respondent has a mental abnormality causing a predisposition to sexual offending and serious difficulty controlling such conduct. Cox diagnosed respondent with sexual sadism disorder, an unspecified paraphilic disorder with narcissistic traits and alcohol use disorder in remission, and she noted that his impulsive, manipulative and reckless offending behavior reflected "an antisocial [*5]orientation . . . within the realm of his sexual offending." She emphasized that respondent's retention of photographs of unsuspecting women, denial of culpability and willingness to violate rules supported antisocial, narcissistic and psychopathic traits, leading her to conclude that respondent has a mental abnormality, and his conditions predispose him to committing sex offenses and impair his ability to control such behavior.
For his part, respondent offered the testimony of Barry Rosenfeld, a clinical forensic psychologist who testified that he interviewed respondent in 2018, and L. Thomas Kucharski, a psychologist. Rosenfeld testified that respondent denied all wrongdoing, claiming the first, second and third victims fabricated or mischaracterized their accounts, and psychological testing indicated paranoia about others learning of his sex offenses along with "modest" substance abuse issues and "average range" antisocial traits. He declined to diagnose respondent with ASPD, sexual sadism or a paraphilic disorder, opining instead that respondent's offenses occurred in the context of substance abuse related impulsivity rather than a condition that predisposed him to sexual offending. Kucharski testified that respondent met the criteria only for alcohol abuse disorder and did not exhibit symptoms severe enough to warrant diagnoses of sexual sadism, a paraphilic disorder, ASPD or narcissistic personality disorder, noting respondent's long-term employment history and over 10-year gap between the offenses involving the second and third victims. He opined that respondent is not predisposed to commit sex offenses and does not have serious difficulty controlling his sexual behavior, adding on cross-examination that he doubted aspects of the DNA evidence related to the second victim and did not consider the first victim's account in his assessment. Inasmuch as the jury found the testimony of Cox and Kirschner diagnosing respondent with ASPD, narcissistic personality disorder and an unspecified paraphilic disorder to be credible, we are satisfied that the verdict pertaining to respondent's mental abnormality is not against the weight of the evidence (see Matter of John H. v State of New York, 246 AD3d 1452, 1453-1454 [4th Dept 2026]; Matter of John R. v State of New York, 242 AD3d at 1572-1573; Matter of State of New York v Joel Z., 240 AD3d at 959). Furthermore, we find no merit to respondent's assertion that his ASPD diagnosis was the sole basis for the jury's finding of a mental abnormality (see Matter of State of New York v Donald DD., 24 NY3d 174, 189 [2014]; see generally Matter of State of New York v Kenneth II., 190 AD3d 33, 42 [3d Dept 2020]).
Turning now to the dispositional hearing, we also reject respondent's contention that Supreme Court erred in finding that he is a dangerous sex offender requiring confinement. "Following a determination that a respondent is a detained sex offender who suffers from a mental abnormality, the court must then[*6]'consider whether the respondent is a dangerous sex offender requiring confinement or a sex offender requiring strict and intensive supervision' " and treatment (hereinafter SIST) (Matter of State of New York v Tony A., 212 AD3d 1056, 1057 [3d Dept 2023], quoting Mental Hygiene Law § 10.07 [f]). "A dangerous sex offender requiring confinement is defined as 'a person who is a detained sex offender suffering from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility' " (Matter of State of New York v Justin R., 187 AD3d 1464, 1465 [3d Dept 2020], quoting Mental Hygiene Law § 10.03 [e]). Petitioner's burden of proof for establishing that respondent is a dangerous sex offender requiring confinement is by clear and convincing evidence (see Mental Hygiene Law § 10.07 [f]; Matter of State of New York v Joel Z., 240 AD3d at 960), and this Court accords deference to Supreme Court's credibility determinations at the dispositional hearing (see Matter of State of New York v Andrew D., 114 AD3d 1043, 1043 [3d Dept 2014]).
Cox testified at the dispositional hearing that respondent is a dangerous sex offender requiring confinement, citing his repeated violations of the third victim's order of protection and his aggressive, rule-challenging behavior in sex offender treatment, which reflected his narcissistic belief that he deserved "special treatment." She further noted that respondent has never successfully engaged in treatment, consistently minimizes both his own offenses and those of others and he would require completion of relapse prevention and sex offender treatment programs before he could safely be considered for community release, as his narcissistic and antisocial traits made him "more likely to violate the rights of others" and, accordingly, dangerous. Kirschner likewise opined that respondent is a dangerous sex offender requiring confinement. Though Kirschner acknowledged gaps in time between respondent's offenses, he asserted that respondent exhibits "serious difficulty" controlling his sexual offending based on the "nature" and "temporal proximity of the series of events" occurring after 2004. Moreover, because respondent had not engaged in any successful treatment, Kirschner opined that respondent's risk level leading up to his incarceration had persisted to present time, especially considering that respondent had not "even come close to admitting" to any wrongdoing.
As for respondent, Rosenfeld testified that, based on the timing of respondent's offenses, he does not have a "particularly strong predisposing condition" that would cause him to reoffend and, therefore, SIST would be a viable option. According to Rosenfeld, the fact that respondent had not successfully completed sex offender treatment was not "dispositive," as there was "lots and lots of [*7]evidence that denial [of one's responsibility] is not actually associated with re-offense." He ultimately opined that respondent is not a dangerous sex offender requiring confinement, pointing to respondent's age of 65 as reducing his risk of reoffending, and noting that there was not "a huge need" for respondent to engage in sex offender treatment, as he did not "see credible evidence of sexual deviance." Respondent testified that he has been sober from alcohol since his arrest in 2005 and that he successfully completed an alcohol and substance abuse treatment program while incarcerated. Respondent acknowledged that he was removed from sex offender treatment in 2016 and was offered the program again later that year, but he refused to participate because he was still upset about being removed. Respondent was not offered sex offender treatment again until March 2021, following the initiation of this proceeding. Respondent also introduced testimony from his brother, who stated that he was willing to support respondent financially and emotionally upon his release, as well as help him find suitable housing.
Cox and Kirschner both opined that respondent possesses a strong predisposition to commit sexual offenses and has an inability to control such behavior to the point that he would be a danger to the community if released. Although Rosenfeld opined that respondent poses a low risk of reoffending and would be better served by SIST, we find no compelling justification to disregard the deference owed to Supreme Court's credibility determinations (see Matter of State of New York v Christopher GG., 247 AD3d 1379, 1383 [3d Dept 2026]; Matter of State of New York v Tony A., 212 AD3d at 1060), which were resolved in favor of petitioner. As such, the court's determination that respondent is a dangerous sex offender requiring confinement in a secure treatment facility is supported by clear and convincing evidence (see Matter of State of New York v Joel Z., 240 AD3d at 961; Matter of State of New York v Tony A., 212 AD3d at 1060).
We have reviewed respondent's assertion that his counsel was ineffective and find that respondent has not met his burden of demonstrating the absence of strategic or other legitimate explanations for counsel's alleged deficiencies (see Matter of State of New York v Kenneth II., 190 AD3d at 44). A careful review of the record demonstrates that counsel raised colorable arguments on respondent's behalf, including his pretrial motion to dismiss on due process grounds, engaged in cross-examination and lodged appropriate objections throughout trial. Accordingly, upon viewing trial counsel's representation in its totality, respondent received meaningful representation (see Matter of John H. v State of New York, 246 AD3d at 1454; Matter of State of New York v David J., 167 AD3d 1251, 1256 [3d Dept 2018], lv denied 32 NY3d 919 [2019]). Respondent's remaining contentions, to the extent they are not addressed herein, have been considered and found [*8]unavailing.
Clark, J.P., Aarons, Mackey and Corcoran, JJ., concur.
ORDERED that the amended order is affirmed, without costs.

Footnotes

Footnote 1
To the extent respondent is arguing that the jury's verdict as to the element of sexual motivation is against weight of the evidence, we find that this contention lacks merit (see generallyMatter of State of New York v Andre L., 84 AD3d 1248, 1250 [2d Dept 2011]).